**UNITED STATES of America,
Plaintiff/Appellee,**

v.

**James L. ISSACS, Defendant/Appellant.**

**No. 82–1534.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1983.

Decided May 9, 1983.

As Amended on Denial of Rehearing
June 20, 1983.

Rommel Bondoc, San Francisco, Cal., for defendant/appellant.

Sandra L. Teters, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before HUG and FARRIS, Circuit Judges, and GADBOIS,* District Judge.

FARRIS, Circuit Judge:

A jury convicted James Louis Issacs on two counts of possession with intent to distribute methaqualone and cocaine in violation of 21 U.S.C. § 841(a)(1). He now challenges: 1) the denial in part of his pretrial motion to suppress certain journals seized during a search of his apartment pursuant to a warrant; 2) the trial court's ruling which permitted the government to impeach his testimony with illegally seized journals; and 3) the trial court's denial of his motion to suppress a gun and related items seized during the same search.

## FACTS

Agents of the Secret Service obtained a warrant to search Issacs's residence for rent receipts and counterfeit Federal Reserve notes. While searching the apartment in Issacs's presence and pursuant to the warrant, the agents uncovered a gun, shoulder holster, and ammunition. The agents also discovered drug paraphernalia and considerable quantities of methaqualone and cocaine on a shelf in the bedroom closet. There is no dispute that the gun, drugs, and related items were in plain view.

In the same closet the agents noticed a safe, the combination to which Issacs gave them. Upon opening the safe, they found six journals bound together with a rubber band. An agent testified that he flipped through the journals in order to ensure that they contained no receipts or counterfeit notes. While leafing through one journal, the agent came across notations which appeared to record drug transactions. Although he noticed nothing similar in the remaining journals at the time, he seized all six.

On April 7, 1982, a grand jury indicted Issacs on six counts. The first and second counts charged him with passing counterfeit notes in violation of 18 U.S.C. § 472. The third and fifth counts charged him with possession with intent to distribute methaqualone and cocaine in violation of 21 U.S.C. § 841(a)(1). The fourth and sixth counts charged him with use of a gun to commit the crimes charged in the third and fifth counts in violation of 18 U.S.C. § 924(c)(1).

After severance of the first two counts, Issacs moved to suppress the journals. The court denied the motion as to the first journal and granted it as to those remaining, reasoning that the agents were not entitled to seize objects when initial inspection revealed no incriminating features. During the course of the first trial, which ended in mistrial, the judge granted a motion for acquittal on the gun counts. At the second trial, a different judge admitted the suppressed journals for purposes of impeachment. The court also admitted evidence of possession of firearms. The jury at the second trial found Issacs guilty of both counts of possession with intent to distribute. On the government's motion the court subsequently dismissed the counterfeit note counts.

## A. SEIZURE OF THE JOURNALS

Issacs argues that the evidence in the unsuppressed journal was beyond plain

* The Honorable Richard A. Gadbois, United States District Judge for the Central District of California, sitting by designation.

view because the agent needed to read its contents to uncover the incriminating notations. The government challenges Issacs's "standing" to object to the search, pointing to his disclaimer of ownership or possession of the journals at trial, and contends that in any case the journal was in plain view.

In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court "abandoned a separate inquiry into a defendant's 'standing' to contest an allegedly illegal search in favor of an inquiry that focused directly on the substance of the defendant's claim that he or she possessed a 'legitimate expectation of privacy' in the area searched." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *accord United States v. Salvucci,* 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980). The conversion of standing from a preliminary to a substantive question makes no practical difference, however. *Rakas,* 439 U.S. at 139, 99 S.Ct. at 428. Issacs must still demonstrate (1) that the agents found the journal in a place in which he had a legitimate expectation of privacy and (2) that the search exceeded fourth amendment constraints. *Rawlings,* 448 U.S. at 104, 100 S.Ct. at 2561.

1. Legitimate expectation of privacy.

At first glance the government's contention that Issacs had no legitimate expectation of privacy in a locked safe hidden in a closet in his own apartment appears ludicrous. The government argues, however, that Issacs's disclaimer at trial of ownership or awareness of the journals negates any expectation of privacy. The government

reasons that "it is logically impossible to have an expectation of privacy in items one does not know exist." Appellee's Brief at 8.

Of course, it is also "logically impossible" for the government to contest Issacs's knowledge or possession for purposes of the suppression motion but to take the opposite position for purposes of proving guilt at trial. Until recently, the rule of automatic standing established in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which was expressly intended to deny the government "the advantage of contradictory positions as a basis for conviction" in possession cases, would have precluded such inconsistency. *Id.* at 263, 80 S.Ct. at 732. However, the Court abandoned that rule in *Salvucci.*[1] The Court there recognized that "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." 448 U.S. at 90, 100 S.Ct. at 2552.

Nevertheless, the government's argument fails here. Its position assumes that *Salvucci* permits the prosecution to charge possession but dispute expectation of privacy regardless of the underlying facts. The rationale of *Salvucci* does not support so unbounded a reading. The Court there refused any longer to recognize a necessary connection between possession and expectation of privacy which "afford[ed] a windfall to defendants whose Fourth Amendment rights [had] *not* been violated." *Id.* at 95, 100 S.Ct. at 2554 (emphasis in original). The Court simply rejected conferral of *automatic* standing; it did not condone prosecutorial self-contradic-

---

1. The *Salvucci* court found that intervening legal developments had eroded the twin grounds of the *Jones* automatic standing rule. The holding in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that "testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial" eliminated "the risk that self-incrimination would attach to the assertion of Fourth Amendment rights." 448 U.S. at 88, 100 S.Ct. at 2551. Likewise, subse-

quent recognition that "a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure" obviated the need "to prevent the 'vice of prosecutorial self-contradiction.'" *Id.* at 88–89, 100 S.Ct. at 2551 (quoting *Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973)).

**1368**

tion.[2] *Salvucci* does not permit the government to argue possession but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent.

■ The government may properly contend that a defendant owned drugs which, moments before the challenged search, he had placed in his girlfriend's purse, in which he had no legitimate expectation of privacy. *See Rawlings,* 448 U.S. at 104–06, 100 S.Ct. at 2561–62. It may argue that checks found in the apartment of another in which a defendant had no legitimate expectation of privacy belonged to the defendant. *See Salvucci,* 448 U.S. at 85, 95, 100 S.Ct. at 2549, 2554. It may properly seek to introduce evidence seized from a room with which a defendant had no connection beyond mere presence and thus no legitimate expectation of privacy. *See United States v. Irizarry,* 673 F.2d 554, 556 (1st Cir.1982). And it may argue that a defendant once possessed an item but, by abandoning it, subsequently renounced any expectation of privacy in it. *See United States v. Veatch,* 674 F.2d 1217, 1220–22 (9th Cir.1981); *United States v. Anderson,* 663 F.2d 934, 937–39 (9th Cir.1981).

Here, however, the government wants it both ways: It seeks to rely on Issacs's disavowal of ownership to defeat his right to contest the lawfulness of the search at the same time it introduces the journal as evidence of his guilt. Yet the government cannot and does not dispute that Issacs had a legitimate expectation of privacy in the safe itself, and there can be no question of abandonment of items found in the putative abandoner's personal safe. Issacs's denial of ownership should not defeat his legitimate expectation of privacy in the space invaded and thus his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial. *See United States v. Ross,* 655 F.2d 1159, 1165 (D.C.Cir.1981) (en banc) (re-

jecting "Government's position that [defendant's] trial tactic, denying knowledge of the [contraband-filled] bag, strips him of Fourth Amendment protection"), *rev'd on other grounds,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Moreover, the distinction the government seeks to draw between an expectation of privacy in the space invaded and the items seized is untenable. The cases upon which it relies all involve seizures from places arguably outside the defendant's control. *See, e.g., Salvucci,* 448 U.S. at 85–86, 95, 100 S.Ct. at 2549–50, 2554–55. *Rawlings,* 448 U.S. at 100–06, 100 S.Ct. at 2559–62. The government's concession that Issacs had "a legitimate expectation of privacy in the invaded place," *Rakas,* 439 U.S. at 143, 99 S.Ct. at 430, precludes its contention that he had none in the items found there.

■ Issacs had a legitimate expectation of privacy in the safe in which the journals were found and thus may contest the lawfulness of their seizure.

2. Plain view.

At the time of Issacs's suppression hearing, the plurality opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), governed the reach of the plain view exception. There Justice Stewart stated that officers inadvertently coming upon objects in plain view during the course of a legal search may seize them even though they are not specifically mentioned in the warrant if it is "immediately apparent to the police that they have evidence before them." *Id.* at 466, 91 S.Ct. at 2038. Issacs argues that this plain view exception to the warrant requirement cannot support the seizure of the journal here because the officer needed to read its contents in order to appreciate their incriminatory nature.

**2.** However, it did suggest that the desire to foreclose prosecutorial self-contradiction was a peripheral ground of the *Jones* decision. 448 U.S. at 90, 100 S.Ct. at 2552. The language of *Jones* establishes otherwise. *See* 362 U.S. at

263–64, 80 S.Ct. at 732; *see also United States v. Agapito,* 620 F.2d 324, 334 (2d Cir.), *cert. denied,* 449 U.S. 834, 101 S.Ct. 107, 66 L.Ed.2d 40 (1980) (pre-*Salvucci*).

■ We disagree. Issacs cannot and does not dispute that the agents could rightfully examine the ledger in order to ascertain whether notes or receipts were hidden within it. *See United States v. Wright,* 667 F.2d 793, 799 (9th Cir.1982). The trial court found that while leafing through the ledger the officers noticed notations that appeared to concern drug transactions. It further found that the agents had perused the ledger in no more thorough a manner than necessary to determine whether it contained the items which were the object of the search warrant. These findings are not clearly erroneous, *see United States v. Lee,* 699 F.2d 466, 468 (9th Cir.1982); *United States v. Wysong,* 528 F.2d 345, 349 (9th Cir.1976), and support the district judge's conclusion that the "inadvertent" discovery of the notations made it clear to the agents that they had evidence before them. *See Coolidge,* 403 U.S. at 469, 466, 91 S.Ct. at 2040, 2038.

The Supreme Court's recent decision in *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), does not affect this result. There the Court reconsidered the *Coolidge* plurality's "immediately apparent" language and substituted a probable cause standard. *See id.* at ——, 103 S.Ct. at 1541–43 (Rehnquist, J.) (plurality opinion); *id.* at ——, 103 S.Ct. at 1545 (Stevens, J., concurring in the judgment); *see also id.* at ——, 103 S.Ct. at 1544 (Powell, J., concurring in the judgment). Justice Rehnquist's plurality opinion also questioned the element of inadvertence. *See id.* at ——, 103 S.Ct. at 1543; *see also id.* at ——, 103 S.Ct. at 1544 (White, J., concurring). Since the district judge's factual findings support his conclusions that the discovery was inadvertent and that the incriminatory nature of the notations was immediately apparent, they would necessarily support conclusions founded on any lower thresholds for these two requirements.

Issacs seeks support in *United States v. Wright,* which involved superficially similar

facts. There we held that the trial court had erred by failing to suppress a black ledger which contained notations concerning drug transactions. 667 F.2d at 797–99. Agents of the Federal Bureau of Alcohol, Tobacco and Firearms had executed a federal search warrant which authorized the seizure of a California driver's license. During the course of the search, Agent Kelly came upon a small black ledger. He searched through the ledger without finding the license which was the subject of the search. Without initially having noticed anything particularly incriminating about the ledger, he brought it to Agent Frantzman of the Drug Enforcement Agency in order to allow him to examine it more closely. Frantzman determined that the ledger recorded drug transactions.

The critical difference between the search invalidated in *Wright* and the search that we consider here is that in *Wright* the initial, justified perusal of the ledger in search of the driver's license revealed nothing incriminating. We carefully observed:

> Kelly's testimony did not include any facts that would give rise to a reasonable suspicion that the ledger was evidence of a crime. Consequently, Kelly exceeded his authority to search for the license when he took the ledger to Frantzman so that he could inspect its contents. Similarly, Frantzman had no right to read the ledger's entries. The incriminating nature of the ledger was not "immediately apparent" to Frantzman but was revealed only after he carefully examined its contents.

*Id.* at 799. Since Kelly, who conducted the initial, justifiable search, had no concrete reason to suspect that the ledger contained incriminating evidence, the search conducted by Frantzman passed beyond the bounds of conduct authorized by the plain view doctrine and into the realm of exploratory rummaging against which the warrant requirement protects.[3] Here, by contrast, the

---

**3.** For the same reason, neither *United States v. Scios,* 590 F.2d 956 (D.C.Cir.1978) (en banc), in which FBI agents opened and read file folders, nor *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971), in which agents read through personal papers to search for hints of criminal activity, provides Issacs support. In both cases the court invalidated the warrantless seizure

trial court specifically found that the agents' observation of the drug-related notations was inadvertent and that their incriminating nature was manifest.

*United States v. Hillyard,* 677 F.2d 1336 (9th Cir.1982); *Wysong;* and *United States v. Damitz,* 495 F.2d 50 (9th Cir.1974), support our conclusion. In *Hillyard* we validated the warrantless seizure of a logbook and notebook found in plain view in the cab of a truck known to be stolen. 677 F.2d at 1341–42. The location of the books gave rise to a reasonable suspicion that they contained evidence. Therefore, it was lawful for the agents to peruse briefly their contents. This examination revealed entries obviously relevant to the criminal scheme under investigation. In *Wysong* we held lawful the seizure of a ledger book found in a suitcase pursuant to a warrant authorizing a search for cocaine and premarked currency. 528 F.2d at 349. Since agents had previously discovered in defendant's motel room a page ripped from a ledger book and covered with figures relating to drug transactions, the agents executing the search had immediate cause to suspect that the ledger, in plain view upon opening the suitcase, was connected with illegal activity. In *Damitz* we upheld the warrantless seizure of a notebook containing evidence of drug sales which agents found in plain view next to drug paraphernalia during a valid search for drugs and drug paraphernalia. 495 F.2d at 56–57. The location of the notebook gave concrete cause for suspicion.

These cases make clear that when conditions justify an agent in examining a ledger, notebook, journal, or similar item, he or she may briefly peruse writing contained therein. *See also United States v. Chesher,* 678 F.2d 1353, 1356–57 n. 2 (9th Cir.1982); *United States v. Ochs,* 595 F.2d 1247, 1256–59 & n. 8 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). The justification may arise from "a 'reasonable suspicion' to believe that the discovered item is evidence," *Wright,* 667 F.2d at 798, as in *Hillyard, Wysong,* and *Damitz;* or

because no concrete grounds for suspicion prompted the exploratory foray into private

it may arise from the authority conferred by a warrant to search for certain items which might reasonably be expected to be found within such a book, as here. In either case, the plain view doctrine would permit brief perusal of the book's contents and, consequently, its seizure if such perusal gives the examining agent probable cause to believe that the book constitutes evidence. *See Hillyard,* 677 F.2d at 1342.

We do not mean to suggest that agents entitled to examine a book or similar item may minutely scrutinize its contents, especially when personal, nonbusiness papers are involved. *See Crouch v. United States,* 454 U.S. 952, 955–56, 102 S.Ct. 491, 492–93, 70 L.Ed.2d 259 (1981) (White, J., dissenting from denial of certiorari). But this case does not require us to explore the limits to brief perusal. The trial court's factual findings establish that no more than a glance was necessary to ascertain the incriminating nature of the notations.

■ The trial court properly admitted the journal in which agents observed the incriminating notations. However, since the preliminary examination uncovered nothing incriminating about the remaining journals, it follows that the agents had no right to seize them in order that they might more closely examine them later. The trial court correctly suppressed them.

### B. USE OF THE SUPPRESSED JOURNALS TO IMPEACH ISSACS

Issacs argues that the trial court erred by allowing the prosecution to use the illegally seized journals to impeach his testimony. He relies on *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), in which the Court held that

a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible in the

papers which eventually produced incriminating evidence.

government's direct case, or otherwise, as substantive evidence of guilt.

*Id.* at 627–28, 100 S.Ct. at 1916–17; *see United States v. Miller,* 676 F.2d 359, 364 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982). On direct examination in the second trial, Issacs denied possession of the drugs found in his apartment and authorship of the notations in the unsuppressed journal; denied having seen any of the legally seized evidence, including the unsuppressed journal, before trial; and denied ever selling any drugs. The government sought to introduce the suppressed journals in order to impeach these statements.

 To the extent that the evidence contradicted statements made on direct, it was admissible, though for impeachment purposes only. *Havens,* 446 U.S. at 624, 100 S.Ct. at 1915; *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). However, the prosecutor went further, eliciting on cross-examination denials by Issacs that he knew persons of the names mentioned in the unsuppressed journal, then seeking to impeach those statements by introducing the suppressed journals which contained those names. Under *Havens* the court should have allowed this impeachment only if the line of questions eliciting the denials were "proper cross-examination reasonably suggested by the defendant's direct examination." 446 U.S. at 627, 100 S.Ct. at 1916. Given the sweeping range of Issacs's denials on direct, the court could properly have concluded that the *Havens* test had been met.

## C. DOUBLE JEOPARDY

Issacs contends that the government subjected him to double jeopardy by introducing firearms found in his residence as evidence of drug trafficking despite his acquittal on two counts of using a gun to commit the crimes of possession with intent to distribute. The argument has no merit. The trial judge has discretion to admit evidence of firearms in drug trafficking cases, *United States v. Miroyan,* 577 F.2d 489, 494–95 (9th Cir.), *cert. denied sub nom.,* 439

U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); *United States v. Kearney,* 560 F.2d 1358, 1369 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977), and the dismissal of the gun counts did not preclude admission of evidence of the guns if relevant for another purpose, *United States v. Hobson,* 519 F.2d 765, 776 (9th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975).

Affirmed.