**UNITED STATES of America, Plaintiff,**

**v.**

**Christ SAVIDES, et al., Defendants.**

**No. 87 CR 17.**

United States District Court, N.D. Illinois, E.D.

July 20, 1987.

See also, 661 F.Supp. 1024, 664 F.Supp. 1555.

Anton R. Valukas, U.S. Atty. by Thomas L. Knight and William Cook, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Edward M. Genson, Chicago, Ill., for defendant Savides.

Patrick A. Tuite, Chicago, Ill., for defendant Pace.

Terence Gillespie, Chicago, Ill., for defendant Wilson.

Christopher Cronson, Oak Park, Ill., for defendant Cialoni.

Robert Novelle, Chicago, Ill., for defendant Greco.

Sam Adam, Chicago, Ill., for defendants Besase and Smith.

## ORDER

BUA, District Judge.

This order concerns defendant Savides' supplemental motion to suppress evidence seized from his residence and defendants Besase, Pace, and Greco's motions to suppress evidence seized from their persons and vehicles. For the reasons stated herein, Savides and Greco's motions are granted in part and denied in part. Besase and Pace's motions are denied.

## FACTS

Pursuant to defendants' requests, this court held extensive pretrial hearings over a period of weeks at which testimony concerning the issues at dispute was offered. The following rendition of relevant facts is based on this court's observations at the hearings.

On March 8, 1986, officers of the Chicago Police Department Gambling Unit arrived at the Park Ridge, Illinois condominium of defendant Christ Savides to execute a gambling search warrant. Aside from Savides, defendants Anthony Besase, Joseph Pace and Donald Greco were present in the residence at the time of the search. Upon entering the residence, police observed Besase emerging from the kitchen and Greco from the bedroom area of the apartment. Pace was found in the den area of the residence carrying a paper bag. Both Pace and Greco were still wearing overcoats. The four were detained in the living room while the search was conducted.

Entering the bedroom from which Greco was observed exiting, officers found nine one-kilogram packages of cocaine lying uncovered in the middle of a bed. Another kilogram of cocaine wrapped in plastic was found in a kitchen drawer together with a razor that had apparently been used to open the package. Upon entering the room in which Pace was located when police arrived, police found $63,000 in United States currency lying on a bookshelf and in the top drawer of a cabinet. Aside from the large amount of narcotics and currency, police seized the following items from Savides' apartment: five handguns, ammunition, sports schedules, slough sheets, tally sheets, water soluble paper, photographs, various personal, business and money order checks, business cards, miscellaneous papers, phone books, a Visa charge card, and a silver money clip. At some point after discovering the ten kilograms of cocaine, officers, believing they had interrupted a large-scale narcotics transaction, arrested the four men. Searching Pace, police discovered that the paper bag he had been holding contained nearly $13,000 in cash. From Besase, police recovered a set of car keys and a receipt from a Daytona, Florida hotel indicating Besase had been a guest on March 6, 1986. According to Besase's identification, he resided in Toledo, Ohio. No items subject to dispute were seized from the person of Savides or Greco at the time of their arrest.

On March 9, 1986, Chicago police officers returned to the vicinity of Savides' residence and located cars which Besase, Pace, and Greco had driven the day before. Presumably acting pursuant to state and federal statutes allowing vehicles used in the commission of a felony drug offense to be seized preliminary to forfeiture, the officers removed the vehicles to a police station. Before leaving the vicinity of Savides' apartment, however, the cars were opened and briefly searched. Upon arriving at a nearby station, the contents of the cars were removed and inventoried. Conducting searches of the three vehicles, police discovered and seized various items which they believed incriminated defendants for drug trafficking. No search warrants, however, were obtained prior to seizing these items. Inside the car believed to have been driven by Pace, police found a red cash receipts book appearing to contain customer accounts with code numbers instead of names. Police also discovered an address book without a cover. Briefly scanning through the red book to assure nothing was lodged between its pages, officers noticed notations of large dollar amounts next to the coded names. According to dates recorded alongside the dollar amounts, the notations had been made recently. In light of the circumstances surrounding Pace's arrest, police concluded

the cash receipts book was a record of cocaine customer accounts and seized it as evidence. An address book found next to the cash receipts book was also briefly perused by the officers. During this limited examination, police saw the same types of code numbers found in the cash receipts book recorded on the back page of the address book. Believing this address book also contained evidence of Pace's criminal activities, the item was seized. Police also seized various receipts and documents purportedly showing the vehicle had been driven by Pace the day before. A similar cash receipts ledger together with an address book was seized from the car Greco had operated. The initial examination of Greco's address book, however, revealed nothing incriminating. After seizing the ledgers from Pace and Greco's vehicles and examining them in detail, police discovered identical information was recorded in the two books. Inventorying the contents of Besase's vehicle, officers found and seized receipts indicating Besase had been in Georgia and Indiana days earlier.

Days later, police began to review the evidence seized from defendants and their cars. Police were informed that Besase was believed to be a reputed organized crime figure from Ohio. Suspecting Besase may have used his car to transport the ten kilograms of cocaine found in Savides' residence from Florida, police returned to Besase's car with a trained narcotics sniffing dog. The dog alerted positively to the rear window well of the car. Upon closer inspection, police discovered a hidden compartment behind the rear seat which was electronically controlled by a switch under the dashboard. A piece of carpeting was removed from the secret compartment and delivered to a crime laboratory where it was determined to contain cocaine. Similarly, no warrant was obtained prior to the subsequent search of and seizure from Besase's automobile.

## DISCUSSION

The seizures outlined above to which defendants object comprise three categories: (1) items seized from Savides' residence, (2) items seized from the persons of the defendants at the time of arrest, and (3) items seized from defendants' vehicles. Parties' arguments concerning these seizures will be addressed in turn.

### A. Items Seized from Savides' Residence

Savides asserts that the seizure of certain items from his residence violated his Fourth Amendment rights in that the seizures were beyond the scope of the search warrant, were not in plain view of the officers searching and that no probable cause existed to believe that the seized items were instrumentalities or evidence of a crime. The items Savides seeks to exclude under the foregoing arguments include: ten kilograms of cocaine,[1] five handguns, $63,000 in United States currency, various personal, business and money order checks, certain business cards and miscellaneous papers, photographs, telephone books, a roll of film,[2] a Visa charge card and a silver money clip.

The search warrant executed by Chicago police authorized the seizure of "records of wagers on sports events, sports schedules, slough or tally sheets, comingled United States currency and any and all paraphernalia related to the illegal act

---

1. As noted by the government, this court has already denied Savides' motion to quash the gambling search warrant and suppress the seized evidence pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Savides' renewed motion under *Franks* is denied for the reasons stated in this court's April 20, 1987 order. *See United States v. Savides,* 658 F.Supp. 1399 (N.D.Ill.1987).

2. Initially, Savides believed the roll of film listed on police reports as "film taken by a Park Ridge Police officer" was an item removed from his apartment by the searching officers. At the suppression hearings, Savides' counsel, Mr. Gensen, specifically asked the officer preparing the report why the film was seized. At that time, the officer disclosed that the entry in his report merely reflected the fact that police had used a camera to take photographs of Savides' residence. As Savides' initial motion was filed prior to this clarification and no arguments were subsequently presented that police were without authority to photograph his residence, Savides' motion to suppress the roll of film is denied.

of gambling and the telephone numbered 698–0374." According to the foregoing language, police were entitled to search the entire condominium for such small items as money, documents and gambling paraphernalia. Conducting the authorized search, police discovered nine one-kilogram packages of cocaine in Savides' bedroom on the middle of his bed. Another kilogram package was recovered from a kitchen drawer. Clearly, the locations in which the cocaine was found were within the scope of the warrant and within plain view of the searching officers. Probable cause existed to believe the packages contained controlled substances. As such, the packages were properly seized.

The handguns Savides seeks to suppress were found in a bedroom closet. Officers noticed that the serial number on one of the firearms had been filed off. Under 26 U.S.C. §§ 5861(h), 5871, possession of such a firearm is prohibited. As such, the gun was lawfully seizable as evidence showing Savides knowingly possessed the contraband firearm. With regard to the remaining firearms, the evidence is unclear as to whether police learned the guns were not lawfully registered while they were in Savides' apartment. A police report indicates that at some point a computer search was executed and no registration could be found for the guns. Yet, this court does not know if this information was obtained before or after the guns were seized. Since no affirmative testimony was offered by the government on this point and the search warrant did not specify the seizure of firearms, this court is unable to find a basis for supporting the seizure of the four remaining guns. Although police certainly had the authority to secure the firearms while conducting their search, seizure without probable cause to believe they were fruits, evidence or instrumentalities of a crime was not permissible. See U.S. v. Owen, 621 F.Supp. 1498 (D.Mich.1985). As such, Savides' motion to suppress the four remaining firearms is granted.

Searching the den area of the Savides' condominium, officers found approximately $63,000 in cash lying on a bookshelf and inside a cabinet in the immediate vicinity of sports books and other gambling paraphernalia. As the warrant permitted seizure of co-mingled United States currency, sufficient authorization existed to seize the money. Additionally, probable cause existed to seize the money as evidence of an apparent drug transaction and as probable forfeitable proceeds of that transaction. See Ill.Rev.Stat. ch. 56½ ¶ 1505.

The checks, phone books and accompanying documents were also found in the proper scope of the execution of the warrant and seizable as probable evidence of a gambling operation. As the government notes, logic and experience dictate that a fair probability existed that the phone books and documents would contain information revealing the identities of individuals participating in Savides' gambling operation. Moreover, it was reasonable for the officers to conclude the phone books themselves constituted "paraphernalia related to the illegal act of gambling and the phone number 698–0374." The checks seized by the officers were not made payable to Savides. Commonly, unlawful gambling debts, when paid by check, are made payable to other entities and laundered back to the gambling operator to avoid detection. Aware of this common operating technique, the gambling unit officers had probable cause to seize the checks as evidence of Savides' gambling activities.

Finally, the photographs, charge card, and money clip seized were not mentioned items on the search warrant. The government asserts these items were properly seizable because they were discovered in plain view and tend to prove defendant's association with the premises search and with the other evidence found therein. However, no authority is advanced for this proposition. No one questions the fact police knew they were entering the residence of Savides to execute a gambling search warrant or that Savides possessed the items contained therein. Since the government does not assert that the observation of these items in Savides' residence gave police probable cause to believe they consti-

### B. *Items Seized from Defendants Incident to Arrest*

Defendants Besase, Pace and Greco contend police who executed the search warrant at Savides' residence lacked probable cause to arrest or search them. Relying on *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), defendants take the position that their mere presence, without more, in Savides' apartment when contraband was discovered did not give police probable cause to search or arrest them. In *Ybarra*, police entered a saloon armed with a warrant to seize narcotics the bartender was believed to be distributing to patrons. *Id.* at 88, 100 S.Ct. at 341. After locating narcotics behind the bar, police conducted a pat-down search of the persons present in the saloon. *Id.* At that time, police felt foreign objects in a cigarette package in Ybarra's pocket. *Id.* Subsequently, police returned to Ybarra and inspected the contents of the cigarette package, discovering it contained heroin. *Id.* at 89, 100 S.Ct. at 341.

Finding police did not have justification to search Ybarra's person, the Supreme Court ruled that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 100 S.Ct. at 342. The Court noted that search or seizure of a person is only permissible when facts supporting probable cause particularized to that individual exist. *Id.* This requirement, according to the Court, cannot be overlooked simply because probable cause

may exist to search or seize another or to search the premises where that individual may happen to be. *Id.* Noting that the facts showed *Ybarra* did nothing suspicious or unusual to give the officers reason to believe he was concealing contraband, the Court held the search unconstitutional and suppressed the narcotics seized. *Id.* at 93, 96, 100 S.Ct. at 343, 345.

■ Comparing the facts in *Ybarra* to those in the present case evinces certain important differences. In *Ybarra*, the defendant was one of several patrons in a public saloon who, after controlled substances were located in an area inaccessible to the defendant, was subjected to a warrantless search notwithstanding the fact he did nor said anything to arouse any suspicion of criminal activity. In the present case, the search took place in a private dwelling in which the public was not invited to come and go. Large quantities of cocaine were found in the middle of a room out of which Greco appeared to be coming. An open kilogram package of cocaine with a razor blade was found in the room out of which Besase was observed leaving. Approximately $63,000 in cash was discovered lying on a shelf and in a cabinet in the room which Pace was in when first observed by police. Moreover, after searching the bag carried by Pace, police discovered it contained a large amount of money.[3]

■ Although *Ybarra* may not only apply to searches of persons who are found in public places for which search warrants have been issued, it is not unreasonable to attach significance to the fact Savides allowed his guests (if not business associates) to be present in his private dwelling with large amounts of narcotics and currency in plain view. As the Seventh Circuit

---

**3.** Officer McKenna, one of the law enforcement officials conducting the search, testified that when first encountering Pace and seeing the bag in his possession, he believed from his observation that the bag contained a large bundle of money. After discovering ten kilograms of cocaine, various items of gambling paraphernalia and over $63,000 in cash, he formed the opinion that the bag contained currency which was seizable under the gambling search warrant. This court cannot say in light of the circumstances existing at the time in Savides' apartment that

Officer McKenna was without particularized probable cause to believe Pace was in the process of concealing evidence seizable under the warrant. The fact that the officer may have also believed the $13,000 was purposed for use by Pace in a large scale narcotics distribution transaction does not destroy the officer's initial justification for examining the contents of the bag. In light of these factors, the search and subsequent seizure of the bag and its contents did not violate Pace's Fourth Amendment rights.

observed in a case involving a person found in the company of another individual possessing a large amount of narcotics, "it strikes us as incredible that a [drug dealer] would have a person accompany him to drug deal believed by [the drug dealer] to be worth over a million dollars, where that person did not have [the drug dealer's] utmost trust and confidence." *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984). By trust and confidence the court implies not only knowledge but participation in the criminal activity of the associate. This is not a situation in which narcotics, gambling paraphernalia and other evidence of criminal activity was extracted from hidden areas far removed from the location of occupants found in a private dwelling. Each of the men visiting the Savides' apartment were observed in or exiting from rooms in which large sums of cocaine or currency were discovered lying in the open. Additionally, a large sum of money in a paper bag was found in the possession of one of the individuals present. Based on circumstances existing in the apartment at the time the warrant was executed, this court cannot say that police did not have probable cause to believe they interrupted a major drug distribution transaction in which each of the defendants was involved. Thus, this court concludes the arrest and search of Besase, Pace and Greco subsequent to the search of Savides' residence was permissible and, the evidence recovered from their persons was properly seizable under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). As such, Besase, Pace, and Greco's motions challenging their arrests and the seizure of evidence from their persons are denied.

### C. *Seizure of Defendants' Vehicles and Items Therein*

Finally, Besase, Pace and Greco contest the warrantless seizures of cars which they had driven to Savides' residence the evening they were arrested and the warrantless seizure of certain items located in these vehicles. The government takes the position that the vehicles were lawfully seizeable pursuant to state and federal forfeiture statutes and that the items seized from the cars were in plain view of officers conducting a routine inventory search. The government advances a second and independent justification for the subsequent warrantless search of Besase's vehicle under *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The issues raised by the foregoing arguments will be addressed in turn.

According to Ill.Rev.Stat. ch. 56½ ¶ 1505(a), vehicles used to facilitate any violation of the Illinois Controlled Substances Act may be seized by any peace officer preliminary to forfeiture proceedings. Although ¶ 1505 normally requires peace officers to obtain a warrant prior to seizure, certain exceptions allowing warrantless seizures are specified. Ill.Rev. Stat. ch. 56½ ¶ 1505(b). Courts interpreting these exemption provisions recognize that when vehicles are used in violation of the Illinois Controlled Substance Act, no warrant is required prior to seizure. *See e.g., People v. One 1974 Chevrolet Corvette*, 117 Ill.App.3d 616, 73 Ill.Dec. 65, 67, 453 N.E.2d 890, 892 (2d Dist.1983).

Similarly, forfeiture provisions of the Federal Controlled Substances Act provide for warrantless seizures of vehicles preliminary to forfeiture proceedings whenever probable cause exists to believe the vehicles were used to facilitate certain federal narcotics violations. 21 U.S.C. § 881(b)(4). Seizure for a suspected violation of the Federal Controlled Substances Act, however, may only be made by the Attorney General of the United States or any officer or employee of the Department of Justice the Attorney General designates. 21 U.S.C. § 871. Pursuant to regulations adopted by the Attorney General, "all special agents of the Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) are authorized and designated to seize property as may be subject to seizure." 21 C.F.R. § 1316.72 (1987).

■ Pace and Greco argue that police were without authority to seize the cars they had driven to Savides' apartment because the cars were not owned by them but

by their relatives. Yet, no requirement exists that the owner actually be the party that uses the vehicle in violation of the Illinois Controlled Substances Act. Quite to the contrary, an owner defending a forfeiture proceeding must carry the burden of proving the alleged unlawful use of the vehicle occurred without his knowledge or consent. Ill.Rev.Stat. ch. 56½ ¶ 1505(a)(3)(ii). The fact that forfeiture proceedings were not subsequently pursued does not affect the validity of the initial seizure or inventory search. The decision to pursue forfeiture proceedings to judgment rests with the State's Attorney not with police officers authorized to enforce ¶ 1505.

Although the government also seeks to justify the warrantless seizure of defendants' vehicles under 21 U.S.C. § 881, the language of the federal statute and its applicable regulations does not support such a position. Only officers and employees of the Department of Justice are statutorily eligible to seize property preliminary to forfeiture. 21 U.S.C. § 871. Regulations adopted by the Attorney General specify that only agents of the DEA or FBI are authorized to seize property subject to forfeiture under § 881. 21 C.F.R. § 1316.-72. Although these federal agents may seize property already in the custody of state law enforcement personnel, an initial seizure by state officers cannot be justified under § 881. This deficiency, however, does not affect the validity of the seizures in the present case as sufficient authority existed under ¶ 1505 of the Illinois Controlled Substances Act to seize defendants' vehicles.

Besase, Pace and Greco next argue that even if their vehicles were properly seized, the subsequent searches of the vehicles' interiors were improper. Defendants acknowledge that police are entitled to conduct an inventory search of a seized vehicle to protect the police department from claims of theft, vandalism or negligence. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Defendants contend, however, that police exceeded the permissible bounds of the inventory search when they viewed the contents of certain books, ledgers, and receipts found in their vehicles. Besase additionally challenges a subsequent search of his vehicle during which police removed a portion of carpeting from the vehicle that tested positive for the presence of cocaine.

■ The law is clear that officers conducting a lawful search may seize items discovered in plain view if probable cause exists to believe the items and evidence of criminal activity. *See Texas v. Brown*, 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (reconsidering the "immediately apparent" language in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and substituting a less rigorous probable cause standard for plain view seizures). Probable cause to seize an item in plain view exists whenever the facts available to the searching officer support a reasonable belief that the item may be contraband, stolen property, or evidence of a crime. *Id.* at 742, 103 S.Ct. at 1543. The plain view doctrine, however, cannot be used to justify exploratory or investigative searches until "something incriminating at last emerges." *Coolidge v. New Hampshire*, 403 U.S. 443, 446, 91 S.Ct. 2022, 2027, 29 L.Ed.2d 564 (1971).

In *United States v. Issacs*, police executing a search warrant in Issacs' residence for rent receipts and counterfeit notes discovered a gun, ammunition, drug paraphernalia and a considerable supply of illegal narcotics. *United States v. Issacs*, 708 F.2d 1365, 1366 (9th Cir.1983). Continuing their search, officers located a safe which contained six bound ledgers. *Id.* Opening each ledger and leafing through the pages to determine whether any of the items mentioned in the warrant were present, police noticed that notations in one of the volumes appeared to concern drug transactions. *Id.* All six ledgers were subsequently seized as evidence of Issacs' drug activities. *Id.* At trial, the ledger containing the incriminatory entries was introduced into evidence and a conviction for narcotics violations resulted. *Id.* On appeal, Issacs argued the journal should have been suppressed because the incriminating nature of the journal was only apparent

after police examined its contents. *Id.* at 1367. Issacs took the position that neither the search warrant nor the plain view doctrine permitted police to actually read the entries in his ledger while searching for the presence of counterfeit notes and rent receipts. *Id.* The Ninth Circuit, however, rejected Issacs' arguments and held the seizure of the ledger proper under the plain view doctrine. After reviewing numerous cases in which warrantless searches and seizures of incriminating ledgers found in plain view were upheld, the court observed:

These cases make clear that when conditions justify an agent in examining a ledger, notebook, journal, or similar item, he or she may briefly peruse writing contained therein. (citations omitted) The justification may arise from "a 'reasonable suspicion' to believe the discovered item is evidence," (citations omitted) or it may arise from the authority conferred by a warrant to search for items that might reasonably be expected to be found within such a book, as here. In either case, the plain view doctrine would permit brief perusal of the book's contents and, consequently, its seizure if such perusal gives the examining agent probable cause to believe that the book constitutes evidence.

*Id.* at 1369–70.

■ Turning to the facts in the present case, the testimony of the officers searching defendants' vehicles clearly indicates that the incriminating nature of the cash receipts books found in Pace and Greco's vehicles was immediately apparent. The officers were well aware that Pace and Greco were arrested on the previous day for possessing ten kilograms of cocaine. When leafing through the two books to ensure the absence of any currency, checks, or other valuable items, the officers were immediately alerted to the highly suspicious nature of the entries. Based on their experience as law enforcement officers and the facts known to them at that time, the officers possessed probable cause to believe the books contained evidence of

criminal activity. As such, the ledgers found in the vehicles operated by Pace and Greco were properly seizable.

■ For the same reason, the address book found in Pace's car was properly seized as it was apparent from the officers' initial examination that it contained evidence of Pace's narcotics activities. The fact that police may have examined the books in great detail after seizing them from the vehicles has no affect on the validity of the seizures. Once sufficient cause exists to lawfully seize an item in plain view, subsequent detailed examinations of that item without a warrant are permissible. *See United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir.1983) (once an item is lawfully seized and searched, subsequent searches of the item so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant). Accordingly, Pace and Greco's motions to suppress the ledgers and Pace's motion to suppress the address book are denied.[4]

■ The address book seized from the car Greco operated presents a different situation. Testimony of the searching officers indicated that their brief perusal of this address book to ascertain whether anything was lodged between the books' pages did not evince any inherent incriminating character. Only upon a subsequent page-by-page examination did officers learn that many incriminating names and phone numbers were recorded. Since at the time of conducting a preliminary examination of Greco's address book the officers did not possess probable cause to believe it contained evidence of criminal activity, the book's seizure was unlawful. *See United States v. Issacs*, 708 F.2d at 1370 (since initial examinations of the five remaining journals uncovered nothing incriminating, suppression was proper as agents had no right to seize journals to more closely examine them at a later time). As such,

---

**4.** Documents seized from Pace and Greco's car indicating they had operated the vehicles the night they were arrested were also properly seized as evidence relevant to the forfeiture proceedings.

Greco's motion to suppress the address book is granted.

■ Finally, this court turns to the items seized from Besase's vehicle. The receipts indicating Besase had been in Indiana and Georgia days before his arrest at Savides' apartment were properly seized by officers. Examination of the contents of the receipts was required so officers could properly describe the items on their inventory report. Officers knew that a receipt had been recovered from Besase the day before which had indicated he lodged at a Daytona, Florida hotel on March 6, 1986. The dates appearing on the receipts found in his car showed that he had taken a recent car trip through Indiana and Georgia. In light of the fact that Florida is well known as a source state for illegal narcotics and that Besase had been arrested for the possession of ten kilograms of cocaine shortly after arriving in Park Ridge, Illinois, police entertained a reasonable belief that Besase had transported the cocaine to Savides' residence. Receipts indicating he had made a recent trip to Florida were thus seizable as evidence of Besase's criminal activities.

The subsequent warrantless search of Besase's car which resulted in the seizure of carpeting containing cocaine residue is first justified by the government on the grounds that police have a continuing duty to secure the contents of vehicles in their possession. According to the officers' testimony, they believed from studying the evidence earlier obtained and from learning that Besase was an organized crime figure from Ohio that controlled substances of great value might still be in Besase's vehicle. The officers thus thought that the contents of the vehicle might not be wholly secure in the impound lot where the car was located. Returning to Besase's vehicle with a narcotics sniffing dog which alerted positively to the rear seat of the car, the officers uncovered a hidden compartment lined with carpet. Forming the reasonable belief that the compartment's only logical purpose was for concealing contraband such as cocaine, the officers were convinced narcotics residue would be found in the carpet lining. On this basis, the officers removed a portion of the carpet and submitted it to a lab for testing. As noted earlier, the carpet tested positive for the presence of cocaine.

Although this court understands the officers' desire to secure the contents of a seized vehicle, the subsequent search and seizure simply cannot be justified as an inventory search. As the Court in *South Dakota v. Opperman* cautioned, an inventory search cannot be used as a pretext for a general investigatory search. *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976). Although police did possess a reasonable belief that Besase's car might still contain contraband, this court knows of no authority which has permitted subsequent searches under the inventory exception to the general rule requiring a warrant.

The government, however, asserts that under *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), once the officers had probable cause to believe evidence of criminal activity existed in Besase's car, the officers were authorized to search the vehicle without a warrant. *Ross* involved a situation where police had probable cause to believe the defendant was selling narcotics from his car. *Id.* at 800, 102 S.Ct. at 2160. Police arrested Ross in his car and discovered narcotics in a paper bag located in the trunk. *Id.* at 801, 102 S.Ct. at 2160. Upon arriving at the station, police again searched the car and discovered a leather pouch containing cash. *Id.* at 802, 102 S.Ct. at 2161. Both the narcotics and cash were admitted at trial, and Ross was convicted. Ross appealed arguing that the warrantless search of the containers found in his trunk violated his Fourth Amendment rights. Rejecting Ross' arguments, the Supreme Court ruled that once police legitimately stop an automobile on the basis of probable cause to believe contraband is concealed somewhere within the car, police may conduct warrantless searches of the vehicle as though a magistrate had issued a warrant. *Id.* at 823–25, 102 S.Ct. at 2172–73.

Although the facts in the present case differ from those in *Ross*, this court agrees that *Ross* principles apply. Here, police had sufficient facts to form a reasonable belief that contraband was contained in Besase's vehicle. Although the car was in police custody for some time prior to the second search, delayed searches under *Ross* are permissible. *See United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). Because the officers had probable cause to believe Besase's car contained evidence of the crime being investigated, no warrant was required to re-enter Besase's vehicle and seize the carpeting which police reasonably believed contained evidence of Besase's narcotics activities. *See People v. Drummond*, 103 Ill. App.3d 621, 59 Ill.Dec. 332, 334, 431 N.E.2d 1089, 1091 (1st Dist. 1981) (warrantless search of defendant's van in police custody permissible because police had probable cause to believe vehicle contained evidence of crime being investigated). As such, Besase's motion to suppress the receipts and carpeting is denied.

## CONCLUSION

For the foregoing reasons, Savides' supplemental motion to suppress is granted in part and denied in part. Greco's motion to suppress is granted in part and denied in part. Pace's motion to suppress is denied. Finally, Besase's motion to suppress is denied.

IT IS SO ORDERED.