UNITED STATES of America, Plaintiff–Appellant,

v.

Timothy SINGLETON, Defendant–Appellee.

No. 92–50383.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1992.

Decided March 10, 1993.

Clare S. Phillips, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.

Robert Ramsey, Jr., Ramsey & Price, Los Angeles, CA, for defendant-appellee.

Before WALLACE, Chief Judge, TROTT and T.G. NELSON, Circuit Judges.

WALLACE, Chief Judge:

The government appeals from the district court's order granting Singleton's motion to suppress evidence seized pursuant to a warrantless search of his father's house. The government challenges the district court's determination that Singleton had standing to challenge the legality of the search. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3731. We vacate the district court's order and remand for further proceedings on Singleton's motion to suppress.

I

On February 11, 1992, agents of the Bureau of Alcohol, Tobacco & Firearms (Agents) obtained a search warrant for a residence located at 135 West 62nd Street in Los Angeles (the front house), which authorized them to search for, among other items, cocaine and firearms. Two days later, a group of Agents and Los Angeles Police Department Officers (Officers) executed the search warrant. In conducting the search, the Agents and Officers discovered the residence owned by Singleton's father, 135½ West 62nd Street (the back house), which was located behind the front house. At the back house, the Officers and Agents found four people: Singleton, Williams, Stinson, and Edwards. The Officers and Agents conducted a search of the back house and in the front bedroom discovered a semi-automatic pistol, approximately 24 grams of cocaine, and documents bearing Singleton's name and various addresses (none of which were the address of the back house).

Based on the evidence seized from the front bedroom, the government filed an indictment charging Singleton with being a

felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in connection with trafficking cocaine, in violation of 18 U.S.C. § 924(c). Singleton subsequently moved to suppress all of the evidence seized during the search of the back house on the grounds the search was conducted without a warrant and without proper consent.

In support of his motion, Singleton filed declarations from himself, Williams, and Edwards. The government opposed Singleton's motion, and filed declarations in support of its opposition from Agent Arena and Officer Ruegg, both of whom helped conduct the search. At a hearing on Singleton's suppression motion, the court accepted the declarations and heard additional testimony from all those who filed declarations and also from Singleton's father.

The court sought to resolve two issues at the hearing: whether Singleton had a legitimate expectation of privacy in the back house (i.e., whether he had standing to challenge the search), and whether Singleton or Williams had given consent to the Officers and Agents to search the back house. The testimony offered diametrically opposed versions of what occurred immediately before and during the search.

As to the issue of standing, one would have expected Singleton to show his relationship to the back house and the government to show the opposite. This did not occur. Rather, Singleton's evidence tended to prove that he did not have a legitimate expectation of privacy in the back house, while the government's evidence tended to prove that he did. Singleton, for instance, testified that he did not live in the back house; that he did not keep any of his personal belongings there; that he had slept at the house on two or three previous occasions but not the night before the search; and that he arrived at the house shortly before the search began.

Witnesses who testified on Singleton's behalf supported his statements. Williams testified that he and Singleton's father were the only residents of the back house and that Singleton never spent a night at the house and did not keep his personal belongings there. Singleton's father testified that his son did not live in the back house and spent the night in the house only a few times. He also testified that his son only occasionally kept his personal belongings at the house. Thus, Singleton tried to show he was not guilty by distancing himself from the critical evidence. Despite this evidence presented on Singleton's behalf, Singleton nonetheless argued that he had an expectation of privacy in the residence because he was present with the consent of his father when the search occurred.

The government, on the other hand, presented evidence that suggested Singleton did live in the back house. Agent Arena stated in his declaration that before searching the front bedroom of the back house, he asked Singleton where he lived. According to Agent Arena, Singleton told him that he lived in the back house and slept in the front bedroom. The government argued at the suppression hearing that it would prove at trial that Singleton lived in the back house and kept his personal possessions there. Thus, the government tried to show Singleton was guilty by connecting him with the critical evidence. Despite the evidence presented and promised by the government, the government nonetheless contended that Singleton did not have standing to contest the search.

The court concluded that Singleton had standing to challenge the legality of the search, stating:

> It is true that based on the Defendant's testimony, he would indicate that he didn't live at that house, and only kept, occasionally, some tools that were owned by he and his father at the house. If that were the evidence on which the Court ... needed to make its finding of standing, the Court would have to find no standing, but since the Government has taken the position that the Defendant, in fact, lived at that house, occupied one of the bedrooms, and the items in that bedroom belong to the Defendant, the Court would find that the Defendant

has ... standing then to challenge the consent or the search.

At the hearing on the government's motion to stay the prosecution of Singleton pending the resolution of this appeal, the district court sought to explain its earlier standing ruling:

> I would just find that the Court finds based upon the evidence presented by the Defendant, that the Defendant had no expectation of privacy into that—as to that apartment, or the specific bedroom where the items were found. The Court last time indicated that it would permit the Defendant to raise the question of consent to the search, based upon the fact that it was the Government's theory—and the Court understood it would be the Government's position that the Defendant did in fact occupy that bedroom, and therefore, items found therein belonged to the Defendant. On that basis, the Court was willing to permit, and did in fact permit the Defendant to argue the consent question.

The evidence regarding Williams and Singleton's alleged consent to the search was also irreconcilable. The court concluded that it had no reason to disbelieve either Singleton's or the government's version of events. Observing that the government bore the burden of establishing consent, however, the court found that the government had failed to demonstrate conclusively that either Singleton or Williams had consented to the search. Therefore, the court granted Singleton's suppression motion. The court subsequently granted the government's motion to stay proceedings pending this appeal.

## II

■ Whether a defendant has standing to contest the legality of a search presents a mixed question of fact and law. The district court's ultimate legal conclusion is reviewed de novo, and the findings of fact underlying that conclusion are reviewed for clear error. *United States v. Iglesias*, 881 F.2d 1519, 1522 (9th Cir.1989), *cert. denied*, 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990).

In *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (*Salvucci*), the Supreme Court abolished the rule of "automatic standing," whereby defendants charged with possessory crimes were entitled to challenge the legality of the search automatically. The Court held that evidence seized should be suppressed only if a defendant proves that his own Fourth Amendment rights were violated during the search. *Id.* at 85, 100 S.Ct. at 2549–50. The Court also reaffirmed the principle that, in order to challenge a search on Fourth Amendment grounds, a defendant bears the burden of demonstrating that he or she had a legitimate expectation of privacy in the place searched. *Id.* at 95, 100 S.Ct. at 2554–55; *see also Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (defendant has the burden of establishing that the search violated his legitimate expectation of privacy in a particular place); *United States v. Davis*, 932 F.2d 752, 756 (9th Cir.1991) (same).

The Court in *Salvucci* also addressed one of the rationales underlying the automatic standing rule: "the 'vice' of prosecutorial contradiction." 448 U.S. at 90, 100 S.Ct. at 2552. The rule of automatic standing was designed, in part, to prevent the government from maintaining self-contradictory positions, arguing for instance that a defendant possessed contraband for purposes of criminal liability but not for purposes of claiming Fourth Amendment protection. *See id.* at 88, 100 S.Ct. at 2551. In *Salvucci*, however, the Court recognized that a defendant in legal possession of an item does not necessarily have a legitimate expectation of privacy in the place from which the item is seized. *Id.* at 91, 100 S.Ct. at 2552–53. Thus, the Court concluded, "a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure." *Id.* at 88–89, 100 S.Ct. at 2551–52.

■ Although a prosecutor does not necessarily advance contradictory positions when attempting to refute standing and

establish possession, we have not read *Salvucci* to condone prosecutorial contradiction when it does occur. *See United States v. Bagley*, 772 F.2d 482 (9th Cir. 1985) (*Bagley*), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Issacs*, 708 F.2d 1365 (9th Cir.) (*Issacs*), *cert. denied*, 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983). As we stated in *Issacs: "Salvucci* does not permit the government to argue possession but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent." 708 F.2d at 1368; *see also Bagley*, 772 F.2d at 489 ("[T]he government may not argue the facts both ways in order to defeat an expectation of privacy.").

█ Here the district court granted Singleton standing to contest the search solely because of the "position" or "theory" advanced by the government: that Singleton lived in the back house. Singleton argues on appeal that the court's conclusion is correct under *Issacs* and *Bagley* because the government took a self-contradictory position at the suppression hearing, arguing that Singleton lived in the back house but that he had no legitimate expectation of privacy there. The government argues that *Issacs* and *Bagley* are distinguishable because it did not take contradictory positions. On the contrary, the government contends it was Singleton who contradicted himself by arguing simultaneously that he had extremely limited contact with the house searched but nonetheless had a legitimate expectation of privacy in it.

In reality, both the government and Singleton took positions that were inconsistent with the evidence they presented. Singleton presented testimony that he had only the slightest contact with the back house. Notwithstanding this evidence, he then argued that he had a legitimate expectation of privacy in that residence. Surprisingly unsatisfied with Singleton's version of events, the government sought to prove—and made clear its intention to prove at trial—that Singleton did in fact live at the back house and kept his possessions there. The government, however, proceeded to contradict the evidence it presented by arguing that Singleton did not have a legitimate expectation of privacy in the place he allegedly lived. Thus, after the presentation of their conflicting versions of Singleton's relationship to the back house, Singleton and the government essentially asked the judge to decide the standing issue in accordance with the other's version.

There is nonetheless a significant difference between this case and either *Issacs* or *Bagley*. In both *Issacs* and *Bagley*, the defendants established that they had a legitimate expectation of privacy in the place searched. We observed in *Issacs* that "the government cannot and does not dispute that Issacs had a legitimate expectation of privacy in the safe" searched. 708 F.2d at 1368. The issue contested by the government was whether Issacs's testimony at trial, in which he denied owning the items found in the safe, deprived him of standing to challenge the district court's denial of his suppression motion. *Id.* at 1367. In *Bagley*, the jury implicitly found that Bagley possessed a car used in fleeing a bank robbery. 772 F.2d at 489. That finding, we concluded, established that Bagley had a legitimate expectation of privacy in the car. *Id.*

In addition to the findings made in *Issacs* and *Bagley*, the procedural history of both cases sets them apart from this one. In both cases, the defendants moved before trial to suppress evidence, the court denied their motions, and they were convicted. *See Bagley*, 772 F.2d at 489; *Issacs*, 708 F.2d at 1366. The government argued on appeal in both cases that the defendants, because of their assertions at trial, did not have standing to challenge the denial of their earlier suppression motions. *See Bagley*, 772 F.2d at 489; *Issacs*, 708 F.2d at 1367. Significantly, in those cases, the government's argument contradicted not only its earlier position, but also the factual findings of either the court or the jury. In both *Bagley* and *Issacs*, those findings established that the defendants had met their burden of proving that they had a legitimate expectation of privacy in the places searched.

Here, by contrast, the district court never determined whether the evidence demonstrated that Singleton had a legitimate expectation of privacy in the back house. The court observed that Singleton did not present evidence sufficient to establish a privacy interest. Without considering whether the government's evidence established Singleton's privacy interest for him, the court nonetheless found that Singleton had standing to contest the search. The court based its finding not on the evidence presented, but rather on the theory or position advanced by the government. The court thus implicitly estopped the government from challenging Singleton's standing because of its argument that Singleton resided at the back house.

A defendant, however, cannot in this context rely on estoppel to discharge his allotted burden of proof, nor may a court overlook a defendant's failure to carry that burden. As stated by the First Circuit, the demonstration of a legitimate expectation of privacy "is a threshold standing requirement, and analysis cannot proceed further without its establishment." *United States v. Cruz–Jimenez*, 894 F.2d 1, 5 (1st Cir.1990). *Issacs* and *Bagley* do hold that the government may not take inconsistent positions. Those holdings, however, necessarily presuppose that an initial finding regarding the defendant's standing has been made, either by the court at a suppression hearing or by the jury at trial.

There are two reasons why this is so. First, without an initial ruling or finding of standing based on the evidence, there is nothing to contradict as there are no "facts" yet established. *See Bagley*, 772 F.2d at 489 (concluding both that the "government may not argue the facts both ways" and that "[a] mere offer of proof [regarding ownership] does not establish the fact of ownership"). Second, if the court does not rule on the evidence, the defendant in some instances would never have to prove that "his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130–31 n. 1, 99 S.Ct.

421, 423–24 n. 1, 58 L.Ed.2d 387 (1978). *Issacs* and *Bagley* may not be read to support such an evisceration of the defendant's burden of proof as established by the Supreme Court.

We thus conclude that the district court erred by relying solely on the government's theory of the case in finding that Singleton had standing to contest the search. The district court should have examined all of the evidence presented at the suppression hearing—by Singleton and the government—and determined whether the evidence, regardless of the arguments presented by the parties, established that Singleton had carried his burden of proving he had a legitimate expectation of privacy. This is an admittedly strange case in that the government did its best to offer evidence that would help Singleton meet his burden of proof. The court, however, should have considered the government's evidence and determined whether it, or that presented by Singleton, was more credible. The irony, of course, is that whichever side the court believes will lose on this issue.

One may well question the wisdom behind the government's decision to present evidence that tended to establish Singleton's standing, when the evidence Singleton presented indicated otherwise. However, Singleton retained the burden of proof, and the government cannot be precluded from arguing that he failed to carry his burden. *See United States v. Irizarry*, 673 F.2d 554, 556–57 (1st Cir.1982) (allowing government to challenge defendant's standing for first time on appeal where defendant "never carried his initial burden of offering facts from which a court might reasonably infer his standing"). The district court could have found standing by discarding the government's argument and relying on the evidence it presented, but the district court should not have eschewed ruling upon the evidence because of the government's curious strategy.

Without limiting the district court's discretion to conduct further proceedings, we direct the district court on remand to rule upon all of the evidence and determine whether it establishes that Singleton had a

privacy interest violated in the search. The district court must determine whether the evidence demonstrates that Singleton had a subjective expectation of privacy in the back house, and, if so, if that subjective expectation is one which society is prepared to recognize as reasonable. *See Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990).

VACATED AND REMANDED.