**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Arturo ARMENTA, Defendant–
Appellant.**

**No. 94–50330.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 9, 1995.

Decided Oct. 25, 1995.

Affirmed in part, and reversed and re-manded in part.

William V. Gallo, Assistant United States Attorney, San Diego, California, for defendant-appellant.

Garrett J. Zelen, Los Angeles, California, for plaintiff-appellee.

Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Jose Arturo Armenta was indicted for conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Armenta entered a guilty plea conditioned on his right to appeal the trial court's summary denial of his pretrial suppression motion. On appeal, a panel of this court remanded for an evidentiary hearing. Following the hearing on remand, the district court denied Armenta's suppression motion. The court also denied Armenta's motion to dismiss the indictment based on the government's failure to ensure the availability of a material witness. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part.

## FACTS

In August 1991, Armenta's codefendant Vargas recruited codefendant Raygoza–Hernandez to transport cocaine from California to New York. The cocaine belonged to Armenta. Ruth Araceli–Lewis (who was not a defendant in this case) rented a motor home for the trip.

On August 24, 1991, Raygoza–Hernandez and a confidential informant ("CI") drove the motor home from Chula Vista to Temecula, California. Armenta and codefendant Batiz–Guzman followed the motor home in a car. In Temecula, the parties switched vehicles, and Armenta and Batiz–Guzman thereafter drove the motor home to a house on Clifford Street (the "Clifford house") in Rialto, California. They parked the motor home in the driveway of the house.

The CI had informed the FBI of the drive, and the FBI had passed the information on to the Orange County Regional Narcotics Suppression Program ("RNSP"). RNSP officers followed the motor home from Temecula to the Clifford house and set up surveillance there. The officers observed numerous cars coming and going from the house. Armenta spent the night in the house.

On August 25, 1991, RNSP officers approached Armenta, Batiz–Guzman, and codefendant de Jesus, who were in or around the motor home. After the officers identified themselves, Officer Serrato asked Armenta if he lived at the Clifford house and owned the

motor home. Armenta replied that he lived in Chula Vista and did not own the motor home. When Batiz–Guzman went into the house to retrieve her identification, Officer Felix asked to accompany her. According to Officer Felix and Officer Kraus, who both entered the house with Batiz–Guzman, she gave them consent to enter. Batiz–Guzman, on the other hand, executed a declaration in May 1992, stating that she had not given the officers consent. The district court found that she had given consent.

Once inside the house, Officer Kraus requested and received consent to check for other occupants of the house. While walking through the house, Officer Kraus observed several kilograms of what appeared to be cocaine lying on a bedroom floor, and packaging materials. He noticed that the house was barely furnished and exhibited few signs of habitation. For example, he could recall seeing no dishes in the kitchen, no towels in the bathroom, and the bedrooms were either empty or contained sleeping bags instead of beds.

The officers detained Armenta, Batiz–Guzman, and de Jesus while Officer Kraus obtained a telephonic search warrant for the house, motor home, and another house on Alice Street. The search uncovered 71 kilograms of cocaine in the motor home, and 3 kilograms of cocaine and a loaded pistol in the Clifford house.

Armenta, Batiz–Guzman, and de Jesus entered conditional guilty pleas in June 1992. They were sentenced to prison terms of 360 months, 120 months, and 121 months, respectively. Only Armenta appealed, arguing that the district court erred by summarily denying his pretrial suppression motion. He filed his notice of appeal on September 1, 1992, and his appeal was argued and submitted to a panel of this court on November 3, 1993.

While Armenta's appeal was pending, Batiz–Guzman asked the Office of International Affairs of the Department of Justice to transfer her to a Mexican prison, pursuant to the Treaty on the Execution of Penal Sentences, Nov. 25, 1976, U.S.–Mex., 28 U.S.T. 7399. By letter received May 4, 1993, the Office of International Affairs asked the prosecutor, William Gallo, to state any objections he had

to Batiz–Guzman's transfer. Gallo did not respond to the letter.

On November 30, 1993, this court rendered its decision in Armenta's appeal, remanding the case for a suppression hearing, and instructing that if Armenta's suppression motion was successful, he must be allowed to withdraw his guilty plea. The panel's decision was received in the prosecutor's office on December 3. Also on December 3, Armenta's attorney sent a letter to Gallo requesting the location of all of Armenta's codefendants. Gallo was out of the state at the time, however, so he did not receive either document until December 17, 1993. Upon his return, Gallo spoke with Armenta's attorney, who stated that he wanted Batiz–Guzman to testify at the suppression hearing. Gallo called the Office of International Affairs and learned that Batiz–Guzman had been transferred to Mexico the prior week, on December 10, 1993. Gallo attempted to secure Batiz–Guzman's voluntary return to the United States, pursuant to the Mutual Legal Assistance Cooperation Treaty, Dec. 9, 1987, U.S.–Mex., 27 I.L.M. 447 (entered into force May 3, 1991), but she refused to return.

The district court held a suppression hearing on April 25, 1994 and denied Armenta's motion, finding that Armenta lacked standing to challenge the search. The court also denied Armenta's motion to dismiss the indictment, concluding that Batiz–Guzman's unavailability at the suppression hearing did not violate Armenta's Fifth or Sixth Amendment rights. Armenta timely appeals both rulings.

## DISCUSSION

### I. STANDARD OF REVIEW

■ Whether an indictment should be dismissed because the government failed to retain a witness is reviewed *de novo. United States v. Velarde–Gavarrete,* 975 F.2d 672, 674 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3010, 125 L.Ed.2d 701 (1993). The lower court's findings of fact with regard to a motion to dismiss on that ground are reviewed for clear error. *Id.*

■ Whether a defendant has standing to contest the legality of a search presents a

mixed question of fact and law. *United States v. Singleton,* 987 F.2d 1444, 1447 (9th Cir.1993). The district court's legal conclusions are reviewed *de novo,* while the findings of fact are reviewed for clear error. *Id.*

## II. MOTION TO DISMISS THE INDICT-MENT

■ Following this court's remand to the district court for a suppression hearing, Armenta moved for dismissal of the indictment. He alleged that the government's failure to ensure Batiz–Guzman's presence at the suppression hearing violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process. He argues that Batiz–Guzman's unavailability to testify prejudiced him during the hearing.

■ "In cases of constitutionally guaranteed access to evidence, wherein the Government loses potentially exculpatory evidence, ... the defendant must make an initial showing that the Government acted in bad faith *and* that this conduct resulted in prejudice to the defendant's case." *United States v. Dring,* 930 F.2d 687, 693 (9th Cir.1991), *cert. denied,* 113 S.Ct. 110 (1992); *United States v. Valenzuela–Bernal,* 458 U.S. 858, 866–67, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982).

The district court found that Armenta failed to prove a constitutional violation because he demonstrated neither bad faith by the prosecutor nor prejudice to his case. We affirm on the ground that Armenta failed to prove bad faith on the part of the prosecutor.

Armenta argues that Gallo attempted to gain an unfair tactical advantage over him at the suppression hearing by securing Batiz–Guzman's unavailability. Such an attempt, if proven, would demonstrate bad faith. *See Dring,* 930 F.2d at 695. As evidence to support this claim, Armenta cites (1) Gallo's

failure to object to Batiz–Guzman's transfer to Mexico, despite Gallo's knowledge that Armenta had appealed the denial of his suppression motion and that Batiz–Guzman had signed a declaration stating that she had not given the officers consent to enter the house; and (2) the fact that Batiz–Guzman was transferred *after* the appellate panel remanded for an evidentiary hearing and *after* Armenta's attorney asked Gallo for the location of Armenta's codefendants. We agree with the district court that this evidence is not sufficient to demonstrate bad faith.

■ Although Gallo did not object to Batiz–Guzman's transfer, he also took no affirmative steps to encourage her transfer: he did not even affirmatively state that he had no objections; he simply did not respond at all to the Office of International Affairs' inquiry.[1] Gallo had no control over the transfer decision; he did not know when or even whether Batiz–Guzman's request for a transfer would be granted. Moreover, Gallo was out of the state when the appellate decision was rendered and when Armenta made his request. Gallo thus did not receive either document until December 17, after Batiz–Guzman had already been transferred. In light of these circumstances, neither the fact that Batiz–Guzman was transferred, nor the timing of that transfer, amounts to bad faith conduct by Gallo.

Gallo's conduct upon learning that Armenta wanted to call Batiz–Guzman as a witness at the suppression hearing further refutes Armenta's claim that Gallo attempted to secure her absence: Gallo immediately attempted to have Batiz–Guzman voluntarily returned under the Mutual Legal Assistance Cooperation Treaty.[2] When that attempt was unsuccessful, Gallo offered to stipulate that if Batiz–Guzman were available to testify at the hearing, she would do so consistently with her declaration, which states that she

---

**1.** Although Gallo's failure to respond to the Office of International Affairs' inquiry may have been negligent, we hold that a negligent failure to ensure a percipient witness' presence does not amount to a finding of bad faith. *Cf. Velarde-Gavarrete,* 975 F.2d at 674–75 (reversing district court's dismissal of indictment where district court found that government had not acted in bad faith, but had conducted "an incredibly incompetent investigation" before releasing wit-

nesses); *Dring,* 930 F.2d at 695 (describing, as examples of "bad faith" conduct, *intentional* governmental action).

**2.** Gallo testified that he could not compel Batiz–Guzman to return to the United States, and Armenta has not argued that Gallo could or should have done so.

did not give the officers consent to enter the Clifford house.

Gallo's conduct does not indicate an attempt to secure Batiz–Guzman's unavailability or an attempt to "gain an unfair tactical advantage" at the suppression hearing. *See Dring,* 930 F.2d at 695. Armenta therefore has failed to demonstrate bad faith by the government. Because lack of bad faith was itself sufficient for rejection of Armenta's motion to dismiss, we need not consider whether the district court correctly found that Armenta was not prejudiced by Batiz–Guzman's unavailability. Accordingly, the district court properly denied Armenta's motion to dismiss the indictment.

## III. MOTION TO SUPPRESS

■ Armenta cannot challenge the search of the Clifford house or motor home on Fourth Amendment grounds unless he demonstrates that he has "standing" to do so, *i.e.,* that he had a legitimate expectation of privacy in those places. *See Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Singleton,* 987 F.2d at 1447. To demonstrate a "legitimate expectation of privacy," Armenta must show that he had an actual subjective expectation of privacy in the Clifford house and motor home, and that society is prepared to recognize that expectation. *United States v. Davis,* 932 F.2d 752, 756 (9th Cir.1991).

### A. The Clifford House

■ Armenta argues that he has standing to challenge the search at the Clifford house because he was an overnight guest at the house. *See Minnesota v. Olson,* 495 U.S. 91, 96–97, 110 S.Ct. 1684, 1687–88, 109 L.Ed.2d 85 (1990) (defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable").

In support of this argument, Armenta presented the following evidence: his own sworn declaration stating that he was an overnight guest; Kraus' testimony that Armenta had spent the night inside the house; the fact that his wallet, baptismal certificate, and social security card application were found inside the house; and his attorney's declaration that Batiz–Guzman would testify that "Armenta was a guest at the Clifford house and had run of the house."

The district court held that this evidence was insufficient to demonstrate that Armenta was, in fact, an "overnight guest" at the Clifford house; the court accordingly held that Armenta lacked standing to challenge the search of the house. For the following reasons, we affirm.

Armenta's bald assertion that he was an overnight guest (and Batiz–Guzman's statement to that effect) is not sufficient to establish that he had a legitimate expectation of privacy in the house. *See United States v. Carr,* 939 F.2d 1442, 1445–46 (10th Cir.1991) (defendant's statement, without further proof, that he had been staying for three weeks in hotel room registered to another was not sufficient under *Olson* ).

The totality of Armenta's situation is vastly different from that of "overnight guests" who do have legitimate expectations of privacy in their hosts' homes. In *Davis,* for example, in which we found a legitimate expectation of privacy, the guest had a key to the apartment, stored things there, and was free to come and go as he pleased. The guest took the precaution of storing his items in a locked safe in the owner's apartment to ensure his privacy. The guest had previously lived in the apartment and continued to pay a portion of the rent. 932 F.2d at 757. In this case, by contrast, there is no identifiable "host" who could or did give Armenta permission to stay at the Clifford house.[3] More-

---

**3.** If Batiz–Guzman had authority to use the house and if Armenta was her guest, Armenta might have a sufficient expectation of privacy under *Olson. See United States v. Elliott,* 50 F.3d 180, 184 (2d Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 715, — L.Ed.2d —— (1995). There is absolutely no evidence to support this scenario, however. Batiz–Guzman was neither the owner nor the renter of the house. Although

the owner was not called to testify, Officer Kraus, who had spoken with the owner, did not recall the owner stating that he gave Batiz–Guzman permission to stay at the Clifford house. Most tellingly, Batiz–Guzman's own declaration states that she "did not live at the [Clifford house]" and she "did not have any control over the place."

over, Armenta had only a wallet and two other documents in the house, but no clothing or other indicia that he was even temporarily living or staying there. He also took no precautions to ensure his own privacy in the house. Armenta's situation does not suggest an "overnight guest" of the sort recognized by this court in *Davis* or of the sort envisioned by the Supreme Court in *Olson*, *i.e.*, one who is in the owner's home "with the permission of his host," and one who is engaging in a "longstanding social custom that serves functions recognized as valuable by society." 495 U.S. at 98–99, 110 S.Ct. at 1689. At most, the evidence suggests that Armenta was "legitimately on the premises," which is insufficient to demonstrate a legitimate expectation of privacy. *See Olson*, 495 U.S. at 97, 110 S.Ct. at 1688 (citing *Rakas*, 439 U.S. at 142–48, 99 S.Ct. at 430–33).

We hold that Armenta has failed to demonstrate a legitimate expectation of privacy in the Clifford house, as an "overnight guest" or otherwise. Therefore, we affirm the denial of Armenta's suppression motion as to the house.

### B. The Motor Home

■ The district court never expressly ruled on Armenta's suppression motion regarding the motor home, or his standing to assert a privacy interest in it. Accordingly, insofar as Armenta's suppression motion relates to evidence seized from the motor home, we remand to the district court for further proceedings to determine whether Armenta had standing to object to the search of the motor home, and, if so, whether there existed probable cause to obtain the warrant under which the search was conducted.

### CONCLUSION

We affirm the district court's denial of Armenta's motion to dismiss the indictment. We affirm the denial of Armenta's motion to suppress as to the Clifford House, but we reverse and remand to the district court for further findings relevant to the motion to suppress evidence found in the search of the motor home.

Affirmed in part and reversed and remanded in part.