110 F.3d 70
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis BONIFACE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Robert SARGENT, aka Robert Goad, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry BOLAIN, Defendant-Appellant.
 Nos. 95-10031, 95-10032 and 96-10036.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1997.
Decided March 25, 1997.
 
 Before: CHOY, BRUNETTI, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lewis Boniface, John Sargent (also known as Robert Lee Goad), and Larry Bolain were indicted for conspiracy and other offenses arising out of the manufacture and distribution of methamphetamine. Boniface ultimately pled guilty to possession of ephedrine with intent to manufacture methamphetamine. See 21 U.S.C. § 841(b)(1). Sargent pled guilty to maintaining a place for the manufacture and distribution of methamphetamine. See 21 U.S.C. § 856(a). Both, however, reserved the right to appeal the denial of their motions to suppress evidence obtained in various searches.[1] They now do appeal those denials. Bolain went to trial. He now claims that the evidence was insufficient to convict him and that there was an evidentiary error which requires reversal.[2] We affirm.
 
 BACKGROUND
 
 3
 An officer of the Sacramento, California Police Department stopped a van driven by Michael Lancellotti, in which Michael Kelley was a passenger. One thing led to another, and Kelley and Lancellotti were arrested. At the time of the stop, the officer noticed a 55-gallon drum in the back of the van, and after a search he discovered various weapons, methamphetamine, and paraphernalia which could be used in the manufacture of methamphetamine. Indeed, one officer considered the van to be a "moving lab." Upon searching Lancellotti himself, an electric company bill for 2720 North Shingle Road in the County of El Dorado, California (hereafter Shingle Road) was found. Boniface and Sargent claimed that all of this evidence was illegally obtained because of an illegal stop of Lancellotti's van and the ensuing illegal searches of the van and of Lancellotti. Thus, they argued, the evidence should be suppressed.
 
 
 4
 The van was stopped in front of (or close to) a house at 441 Columbus Avenue, Sacramento, California which the officer had been surveilling because of a tip that drug activity was taking place there. Due in part to a comment made by Lancellotti and a similarity between the drum in the van and other drums at the house, an initial entry and sweep of the house was made, and a warrant to search it was then obtained. In that search, more manufacturing paraphernalia and weapons were found, as were recipes for the manufacture of methamphetamine. However, no working lab was found. Boniface and Sargent sought to suppress that evidence also.
 
 
 5
 A search warrant was then obtained for Shingle Road based upon the electric bill; a check with the electric company, which indicated that the power for the residence at that property was in Lancellotti's name; and based upon the requesting officer's experience. When that warrant was served, Sargent and Boniface were discovered on the property. So were weapons, drugs, precursor chemicals--for example, ephedrine--and a drug laboratory. Both Boniface and Sargent sought to suppress the evidence found at Shingle Road on the grounds that the earlier arrest and searches were illegal, the warrant for Shingle Road was served in violation of the knock and announce law, and the warrant itself was invalid because the affidavit was plainly insufficient and omitted some information.
 
 
 6
 The district court determined that Boniface and Sargent had standing to attack all of the searches, but denied the motions to suppress.
 
 DISCUSSION
 
 7
 A. Standing.
 
 
 8
 The district court determined that Boniface and Sargent had standing to challenge the traffic stop and the searches other than the one at Shingle Road because evidence from those led to the Shingle Road search. For that proposition the district court cited Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), a classic "fruit of the poisonous tree" case. With all due respect, that case has no application to the standing issue.
 
 
 9
 Fourth Amendment rights are personal; they may not be vicariously asserted. See Rakas v. Illinois, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). A defendant must show that the challenged action by the police violated his own Fourth Amendment rights, not someone else's. See United States v. Padilla, 508 U.S. 77, ----, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993) (per curiam). That means that even if a warrant is based upon evidence obtained in an illegal search of someone else, the defendant cannot challenge the warrant's legality. See United States v. Chase, 692 F.2d 69, 70 (9th Cir.1982) (per curiam). It also means that if a search follows an illegal arrest of someone else, the defendant cannot challenge either the arrest or the warrant. See United States v. Robertson, 833 F.2d 777, 779 (9th Cir.1987); see also United States v. Kinsey, 843 F.2d 383, 389-90 (9th Cir.1988). Thus, neither Boniface nor Sargent has standing to challenge the stop and arrest of Lancellotti and Kelley or the searches of places other than Shingle Road. Neither of them has, or can spell out, any violation of his personal Fourth Amendment rights in that respect.
 
 
 10
 The Shingle Road searches present a different issue entirely because both Boniface and Sargent were there when the searches took place. The government does not challenge Sargent's standing, but it does assert that Boniface did not have standing to challenge the warrant. The government may not have raised that issue in the district court, but it may, and did, raise the issue on appeal. See Robertson, 833 F.2d at 779.
 
 
 11
 We agree that on the facts of this case, Boniface lacks standing. While he was, no doubt, on the premises at the time of the search and claimed to be a "house guest," there was no evidence that he had any belongings there or that he had permission to be there from anyone who could give him that permission. The property, apparently, belonged to Lancellotti, but neither Boniface nor Lancellotti himself said that Boniface had Lancellotti's permission to be in residence. Sargent had very limited rights to be on the property himself, and he never said that he could, or did, give Boniface permission to stay over. He simply said that Boniface came in. Boniface, therefore, showed no legitimate expectation of privacy in any part of the house. See United States v. Armenta, 69 F.3d 304, 308-09 (9th Cir.1995).
 
 
 12
 B. Knock and Announce.
 
 
 13
 Both Boniface and Sargent challenge the method of service of the warrant. They assert that the knock and announce requirements required by law were not complied with. Their claim fails because the district court agreed with the government's version of the facts, not theirs. We have reviewed the record and find no clear error in the district court's factual determinations. See United States v. Zermeno, 66 F.3d 1058, 1061 (9th Cir.1995). That being so, the government clearly did comply with any knock and announce requirements.[3]
 
 
 14
 C. The Warrant.
 
 
 15
 In order for there to be probable cause to justify a search warrant, there must be "a sufficient showing that incriminating items are located on the property to which entry is sought." United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir.1991). That means that there must be "reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." Id. In making that determination, we do apply a common sense and realistic standard rather than a hypertechnical one, but we examine the totality of the circumstances. See United States v. Holzman, 871 F.2d 1496, 1511 (9th Cir.1989). Moreover, we do give a great deal of deference to the determination of the issuing magistrate. Id. But the affidavit in support of the warrant must show a connection between the material which is sought and the place to be searched. See United States v. Clark, 31 F.3d 831, 835 (9th Cir.1994); Ramos, 923 F.2d at 1351-53.
 
 
 16
 Here, once the generalities are cleared away, we are left with four salient facts: Lancellotti was involved in drug dealing or manufacturing or both; no operating drug lab had been found; there was drug equipment in the van; and Lancellotti had an interest in the Shingle Road property. Nothing indicated that the property was Lancellotti's residence. In fact, the information in the affidavit indicated the opposite. For that matter, nothing showed that Lancellotti was anything but the one who received the electric bill, perhaps as a convenience or as a landlord. There was no other evidence of suspicious activity at the location or that Lancellotti had even been seen there at any time. In short, no direct evidence specifically tied drug activity to that location. If the affidavit supporting this warrant were sufficient, every tenant is at risk whenever his landlord commits any offense. That is not the law. Thus, the affidavit was insufficient to show probable cause, and the warrant was invalid.
 
 
 17
 But, says the government, the good faith exception should apply. See United States v. Leon, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 3420-21, 82 L.Ed.2d 677 (1984). With that we agree. The officers knew that Lancellotti was a drug manufacturer; they had found drug manufacturing paraphernalia both in his van--a moving lab according to one of them--and at 441 Columbus Avenue. But they did not find his current manufacturing location. Thus they decided that the laboratory might well be at Shingle Road. They were correct as it turned out, but we put no weight on that fact. When they presented all of this to the magistrate, he determined that there was probable cause. As we have said, we disagree, but we cannot say that reliance on the warrant was "objectively unreasonable." See id. at 922, 104 S.Ct. at 3420. We cannot say that the magistrate wholly abandoned his judicial role, or that the warrant was so lacking in evidence of probable cause that reliance was unreasonable. See id. at 923, 104 S.Ct. at 3421; cf. United States v. Hove, 848 F.2d 137, 139-40 (9th CIr.1988); Holzman, 871 F.2d at 1511 n. 4. Finally, and this also disposes of the claim that a Franks[4] evidentiary hearing was required, no significant misstatements in or omissions from the affidavit have been pointed out. See Leon, 468 U.S. at 923, 104 S.Ct. at 3421. In short, the warrant sufficed to establish that the officers " 'acted in good faith in conducting the search.' " See id. at 922, 104 S.Ct. at 3420 (citation omitted).[5]
 
 
 18
 C. Bolain's Appeal.
 
 
 19
 The district court admitted a letter, which was powerful evidence to show that Bolain was part of the conspiracy and also tended to show that he was not acting as a government informant. Clearly the evidence was relevant. However, it also showed that Bolain was interested in silencing a witness against him. That could have had a tendency to unfairly prejudice him. See Fed.R.Evid. 403. However, even without a Rule 403 objection from Bolain, the district court gave a limiting instruction to the jury, which removed any unfair prejudice. See United States v. Tsinnijinnie, 91 F.3d 1285, 1289 (9th Cir.1996); United States v. Basinger, 60 F.3d 1400, 1408 (9th Cir.1995). The district court did not abuse its discretion when it admitted that evidence. See Basinger, 60 F.3d at 1408.
 
 
 20
 Bolain's second and final contention is that the evidence was not sufficient to sustain his conviction. We have reviewed the record, find the evidence compelling to say the least, and hold that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995). Thus, this contention must also fail.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The suppression rulings were made by Judge Garcia
 
 
 [2]
 The trial was presided over by Judge Schwartz
 
 
 [3]
 The government asserts in a footnote that Boniface's lack of standing extends to this claim as well. See Zermeno, 66 F.3d at 1062; cf. United States v. Lockett, 919 F.2d 585, 588-89 (9th Cir.1990). Because Boniface would lose on the merits in any event, we do not decide that issue
 
 
 [4]
 See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Incidentally, Sargent's other technical attacks on the warrant are completely meritless
 
 
 [5]
 Sargent's newly minted claim that the district court should have recused itself is not properly before us. See United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991)