**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mario SILVA, Jorge Zepeda-Medrano,**
**and Alejandro Aguilar-Espinoza,**
**Defendants–Appellants.**

Nos. 99–10416, 99–10422, 99–10524.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2000.

Filed April 20, 2001.

John J. Jordan, San Francisco, California, and Maria J. Fonseca, Redwood City, California, for the defendants-appellants.

Kathleen A. Servatius, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: GRABER, FISHER, and BERZON, Circuit Judges.

GRABER, Circuit Judge:

Defendants Mario Silva, Jorge Zepeda–Medrano, and Alejandro Aguilar–Espinoza challenge their convictions. They contend that the district court erred in denying their motions to suppress evidence gathered by police during an investigation of a conspiracy to manufacture and distribute methamphetamine. For the reasons dis-

cussed below, we hold that the police did not violate the Fourth Amendment when they searched the buildings in question. We remand the case, however, because the district court failed to rule on the validity of the search of Defendants' persons.

## FACTUAL AND PROCEDURAL BACKGROUND

As part of an investigation into the purchase of chemicals used in the manufacture of methamphetamine, the California Bureau of Narcotics Enforcement secured a search warrant for several locations, including 2842 Apricot Road in Patterson, California, and 1420 Sylvan Avenue in Modesto, California. The latter is the residence of Defendant Zepeda–Medrano. Fearing that disclosure of the details contained in the warrant could jeopardize the continuing investigation of the case, the investigating officer asked the Superior Court of California to seal the warrant. Pursuant to California law, the court agreed.

The warrant authorized a search of 2842 Apricot Road; however, attached to the warrant was a picture of 2844 Apricot Road. The police ultimately found a methamphetamine laboratory in a shed located at 2852 Apricot Road. The confusion in addresses arose, at least in part, from the physical layout of Apricot Road. Apricot Road is an unsurfaced street along which are located a barn, several homes, and various trailers and sheds. Numbered mailboxes are located at the end of the street. The gas company's records show that there are only two residences on the property, 2842 and 2844. According to the tax assessor's records, all the residences on Apricot Road are located on one parcel of land. Although the property has not been subdivided officially, the lessees have done so informally.

When the police arrived to execute the search warrant, they realized that the residence authorized to be searched was not the residence pictured in the photograph. Nevertheless, they searched 2842 Apricot Road, the place described in the body of the warrant. The police found no drugs at that location. The agents then searched 2844 Apricot Road, the building pictured in the attachment to the warrant, and again found no drugs. While back on the road, in his truck, a police officer then observed a cloud of gas emanating from a shed 32 feet from the residence at 2852 Apricot Road. The door to the shed was open, and the officer could see a man in the process of "gassing out" liquid methamphetamine and converting it to a solid, a step in the manufacture of the usable form of the drug. The man whom the officer saw, Defendant Silva, fled but was apprehended. Officers then removed Defendants Aguilar–Espinoza and Zepeda–Medrano from inside the shed and arrested them. The police searched the persons of all three Defendants and seized several items, including keys from Zepeda–Medrano that fit a lock to the shed.

From the shed's open doorway, the police could see several objects, including a metal HCL gas cylinder with rubber and plastic tubing that led into a stained, white plastic bucket containing a liquid. The officers also could smell a strong chemical odor emanating from the structure. These observations led them to believe that the shed was a methamphetamine laboratory. The officers also discovered that the shed was an outbuilding belonging to 2852 Apricot Road. That discovery convinced the officer in charge to obtain a second warrant. After she secured the second warrant, the police searched the shed and seized several items. The officers left a notice of search and an inventory of all items seized on the door of the residence

at 2852 Apricot Road. They did not leave a copy of the search warrant.

Police then interviewed the lessee of the residence at 2852 Apricot Road, Jesse Figueroa. He stated that, in October of 1997, he was approached by someone named "Niko" who asked him to allow some unidentified Hispanics to sublease some of the structures on the property. Figueroa told officers that, since his meeting with "Niko," he had noticed two different groups of people using the property, who stayed 5 to 10 days each time. Figueroa did not identify Defendants as being among the people whom he had observed.

Later the same morning, the police executed a separate search warrant at Defendant Zepeda–Medrano's home, located at 1420 Sylvan Avenue. The officers knocked and announced their presence; when no one answered, they entered the home forcibly. Once inside, the officers found several individuals, including Zepeda–Medrano's wife. After searching the premises, the officers left with Zepeda–Medrano's wife a notice of search and a receipt listing all items that had been seized, but they did not leave a copy of the search warrant, nor did she request one.

Defendants were charged with conspiracy to manufacture, distribute, and possess methamphetamine and with manufacturing and possessing methamphetamine with the intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846, and 848. They filed a motion to suppress all evidence seized pursuant to the search warrants. Defendants argued that the police had conducted an illegal general search on Apricot Road that could not be cured by the second warrant (for the shed) or by the plain view doctrine. Defendants also asserted that the failure to show copies of the warrants to the residents of 2852 Apricot Road and 1420 Sylvan Avenue "vi-olated the particularity requirements of the Fourth Amendment."

The district court refused to suppress any of the evidence. The court ruled that Defendants had not established a reasonable expectation of privacy in either 2852 Apricot Road or the shed and, thus, lacked standing to contest the search. The court also denied Defendant Zepeda–Medrano's motion to suppress the evidence seized from his home. The court held that "the mere failure by the searching officers to provide a copy of the search warrant during the search does not constitute a violation of the Fourth Amendment."

Defendants pleaded guilty to conspiracy to manufacture methamphetamine, reserving the right to appeal the district court's suppression rulings. Defendants Silva and Zepeda–Medrano were sentenced to 262 months' imprisonment followed by 60 months' supervised release. Defendant Aguilar–Espinoza received a sentence of 210 months' imprisonment followed by 60 months' supervised release. Defendants bring this timely appeal.

## STANDARD OF REVIEW

We review de novo a district court's refusal to grant a motion to suppress evidence. *United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir.1997). We also review de novo a district court's conclusion concerning whether a defendant has standing to challenge a search or seizure. *United States v. Sarkisian,* 197 F.3d 966, 986 (9th Cir.1999). We review the trial court's factual findings for clear error. *Kemmish,* 120 F.3d at 939.

## DISCUSSION

A. *The Search of the Shed at 2852 Apricot Road*

Defendants challenge the district court's conclusion that they did not have standing

to contest the search of the shed. Defendants submitted affidavits to the district court in which they claimed that they had a legitimate expectation of privacy in the shed as a "commercial" area and that they expected to be left alone as they manufactured methamphetamine. Defendants point out that Zepeda–Medrano possessed a key to the shed's lock and assert that they all had stayed in the shed during the night before the police arrived. Defendants also claim that, because the government argued at the arrest and bail hearings that Defendants exercised dominion and control over the items seized in the shed, the government should be estopped from making an inconsistent argument with respect to standing.

### 1. *Standing*

 Fourth Amendment rights cannot be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Johns*, 851 F.2d 1131, 1135 (9th Cir.1988). In order to claim the protections of the Fourth Amendment here, Defendants must establish that they had an expectation of privacy in the shed and that their expectation was reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The reasonableness of an expectation of privacy is evaluated "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. 421. Defendants have the burden of establishing that, under the totality of the circumstances, the search or the seizure violated their legitimate expectation of privacy. *Sarkisian*, 197 F.3d at 986.

 Defendants argue that they had a legitimate expectation of privacy in the shed because they were renters of property used for commercial purposes or were overnight guests. It is true that an individual can have a legitimate expectation of privacy in a commercial area. *Id.* Similarly, an overnight guest has a legitimate expectation of privacy in the host's property. *Minnesota v. Olson*, 495 U.S. 91, 96 n. 4, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *United States v. Gamez–Orduno*, 235 F.3d 453, 458 (9th Cir.2000). Under the present facts, however, neither theory affords Defendants standing to contest the search of the shed.

In *United States v. Davis*, 932 F.2d 752, 757 (9th Cir.1991), this court held that the defendant had standing to contest the search of a friend's apartment when the defendant previously had resided at the apartment and still possessed a key; had permission to come and go as he pleased; had independent access to the place searched; stored items in a locked safe at the apartment to ensure privacy; and assumed an ongoing obligation to pay rent. This court found the defendant's continuing obligation to pay rent especially "significant." Under the totality of the circumstances, the defendant had established a legitimate expectation of privacy in his friend's apartment. *Id.*

By contrast, in *United States v. Armenta*, 69 F.3d 304, 308 (9th Cir.1995), this court held that a defendant did not have standing to challenge the legitimacy of a search when the following evidence was presented: the defendant's sworn declaration that he was an overnight guest; a police officer's testimony that the defendant had stayed at the house the night before the search; certain personal items of the defendant's found at the house; and the declaration of the defendant's lawyer that the owner of the house would testify that the defendant was a guest. In so holding, the court observed that the defendant's "bald assertion that he was an overnight guest ... is not sufficient to estab-

lish that he had a legitimate expectation of privacy in the house" because he had presented no evidence that there was an identifiable host who could have given him permission to stay at the residence. *Id.* The court concluded that, "[a]t most, the evidence suggests that [the defendant] was 'legitimately on the premises,' which is insufficient to demonstrate a legitimate expectation of privacy." *Id.* at 309 (quoting *Olson,* 495 U.S. at 97, 110 S.Ct. 1684). The court acknowledged that an overnight guest can have a legitimate expectation of privacy in the host's premises but held that the defendant's evidence simply fell short. *Id.* at 309 & n. 3, 110 S.Ct. 1684.

In *Sarkisian,* 197 F.3d at 987, this court held that the defendants lacked standing to challenge the legitimacy of a search of a rented commercial storage room, because they never claimed an interest in any of the items seized during the search, and there was no evidence that they had paid rent. This court emphasized that individuals have a lower expectation of privacy in commercial areas than they do in residences. *Id.* at 986–87; *see also Carter,* 525 U.S. at 90–91, 119 S.Ct. 469 (holding that the defendants had no reasonable expectation of privacy in an apartment when they were there briefly to conduct a commercial transaction and had no previous connection to the apartment).

Finally, in *Gamez–Orduno,* 235 F.3d at 459, this court held that the defendants, who were staying in a trailer for food and rest at the behest of an identifiable host, had a reasonable expectation of privacy even though the activity from which they were resting was commercial. The court contrasted the defendants' situation with that of the defendants in *Carter,* who had used an acquaintance's apartment for the purely commercial activities of cutting and packaging drugs, and who were held to

lack a reasonable expectation of privacy. *Id.* at 459–60.

Under the foregoing precedents, Defendants had no legitimate expectation of privacy in the shed, either as overnight guests or as renters of commercial property. The only hard evidence that Defendants cite is the key that was found on Zepeda–Medrano's person. But the presence of the key tends to show only that he was permitted to enter the shed; it proves nothing about the duration of that permission or about his expectation of privacy therein. The only other evidence consists of Defendants' bald assertions in their declarations that they had a reasonable expectation of privacy and that they had stayed in the shed during the previous night. Those assertions are not sufficient to establish that they were in fact overnight guests of an identifiable host, or that their expectation of privacy was otherwise legitimate. *See Armenta,* 69 F.3d at 308. There is no evidence that Defendants were among the people who had made arrangements to sublease the shed from the tenant at 2852 Apricot Road. There is no evidence that any Defendant was in the shed for more than a few hours or was there for any activity other than the purely commercial activity of manufacturing drugs. The district court specifically found that Defendants were "briefly on the premises of the shed solely for commercial purposes at the behest of the unidentified sub-lessor of the shed." That finding is not clearly erroneous. We conclude that Defendants have no standing to contest the search of the shed.

### 2. *Estoppel*

Defendants assert that, at the arrest hearing in state court and at the bail hearing in federal court, the government maintained that Defendants exercised dominion and control over the items seized from the

shed. According to Defendants, the government took a contradictory position at the suppression hearing.

 The government cannot take contradictory positions in order to defeat an asserted expectation of privacy. *United States v. Bagley*, 772 F.2d 482, 489 (9th Cir.1985). However, the government's position, whether contradictory or not, cannot discharge Defendants' factual burden of establishing standing. *United States v. Zermeno*, 66 F.3d 1058, 1061–62 (9th Cir. 1995); *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir.1993). As discussed above, Defendants failed to establish that they had a reasonable expectation of privacy in the shed.[1] Accordingly, we affirm the district court's ruling that Defendants have no standing to contest the validity of the search of the shed on Apricot Road.

### B. *The Search of Defendants' Persons*

Defendants argue that, even if they had no standing to contest the search of the shed, they certainly can challenge the search of their persons. The government conceded at oral argument that a remand is necessary because the district court neglected to rule on this issue at all. We agree. Therefore, we remand for the district court to consider and rule on the validity of the search of Defendants' persons.

### C. *The Search of 1420 Sylvan Avenue*

We move now to the search at 1420 Sylvan Avenue. Defendant Zepeda–Me-

drano argues that the evidence seized from his home should be suppressed because the agents "failed to show, provide, or read anyone copies of the warrants, or copies of the affidavit," in violation of the "particularity" requirement of the Fourth Amendment.[2] We are not persuaded. We hold that the warrant itself was sufficiently particular and that Defendant does not have standing to challenge the execution of the warrant.

The Fourth Amendment requires that warrants describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The description must enable "the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986). The particularity requirement "is aimed at protecting against general searches and insures that nothing is left to the discretion of the executing officer." *United States v. Robertson*, 833 F.2d 777, 783 n. 4 (9th Cir. 1987). Moreover, a warrant that describes with particularity what is to be searched and seized gives assurance and "notice to the person subject to the search what the officers are entitled to seize." *United States v. Gantt*, 194 F.3d 987, 1001 (9th Cir.1999).

In the present case, the warrant was, on its face, sufficiently particular in describing the places to be searched and the items to be seized.[3] Defendant does *not* argue

---

1. It also is not clear that the government's positions with respect to *the building* and *the goods in it* were contradictory. The government maintained that Defendants possessed the methamphetamine, and the tools to make it, but that they did not have a sufficient privacy interest in the shed itself to give them standing.

2. Defendant Zepeda–Medrano does not argue that probable cause was lacking for issuance of the warrant.

3. The warrant described the place to be searched as a

 single-story residence with a detached garage, the garage door is painted brown with a dark brown shake roof, the numbers

that the warrant, on its face, was too general. Instead, he argues that the warrant violated the "particularity" requirement of the Fourth Amendment because the police did not *leave a copy* of the warrant with his wife when they executed it. Defendant Zepeda–Medrano was incarcerated at the time of the search.

Defendant cites *United States v. McGrew*, 122 F.3d 847 (9th Cir.1997), in support of his claim. *McGrew* involved a federal warrant that incorporated by reference a supporting affidavit. The agents gave the defendant a copy of the bare and uninformative warrant during the search, but failed to provide the incorporated affidavit. This court held that the search was illegal because "[i]t is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." *Id.* at 850.

Whatever the potential application of *McGrew* to a state warrant,[4] Defendant Zepeda–Medrano lacks standing to assert the claim. As noted, the particularity requirement helps to limit the discretion of the searching officer and provides "the property owner assurance and notice during the search." *Gantt*, 194 F.3d at 1001. A warrant that does not describe with particularity "the place to be searched, and the persons or things to be seized" fails to accomplish either of these goals. However, *if the warrant itself is particular*, then the first interest is protected; the property owner's remaining interests, that of assurance and notice, are then protected by the Fourth Amendment's general prohibition against unreasonable searches. *Cf. United States v. Becker*, 23 F.3d 1537, 1540 (9th Cir.1994) (observing that "the protection offered by the Fourth Amendment and by our law does not exhaust itself once a warrant is obtained").

 Because the warrant in this case was facially particular, we are left with the question whether the officers' *execution* of the warrant at Defendant Zepeda–Medrano's home was reasonable. We need not answer that question, however, because Defendant, who was in prison at the time of the search, lacks standing to challenge the warrant's execution.

---

"1420" appear above the front door of the residence and on the archway leading into the courtyard of 1420, 1422, 1426, and 1428 Sylvan Avenue, the brown garage with [sic] dark brown shake roof is attached to the complex and the numbers "1420" are attached to the east side of the large garage door.

The warrant described 18 categories of items to be seized, including

[b]ooks, records, receipts, purchase orders, notes, ledgers, and any other paper relating to the transportation, ordering, distribution and purchase of chemical precursors, reagents and solvents used to manufacture methamphetamine such as: ephedrine, acids, Freon, red phosphorous, hydrogen, P–2–P, ether, aluminum, methylamine, acetic anhydride, chloroform, caustic soda, sodium hydroxide, iodine crystals, hydrochloride gas, iodine, methylsulfonylmethane, methanol, and alcohol.

Defendant Zepeda–Medrano does not argue that the search exceeded the scope of the warrant.

4. *McGrew* involved a federal warrant, so the agents were required by Federal Rule of Criminal Procedure Rule 41(d) to "give to the person from whom or from whose premises the property was taken a copy of the warrant." Here the search warrant was issued by a California court and was executed by California officers, so Rule 41(d) does not apply. Rule 41(d) still would apply if the search were federal in character, *United States v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993), but Defendant Zepeda–Medrano does not argue that it was. In California, "there is no statutory or constitutional requirement that a search warrant be exhibited as a prerequisite to execute it." *People v. Rodrigues–Fernandez*, 235 Cal.App.3d 543, 553, 286 Cal. Rptr. 700 (1991).

This court held recently that a defendant who was not present during a warrant's service and execution lacked standing to challenge an officer's compliance with knock-and-announce requirements. *Mena v. City of Simi Valley*, 226 F.3d 1031, 1035 n. 2 (9th Cir.2000). The same reasoning applies here. The interests protected by the "knock-and-announce" rule and those protected by Rule 41(d) are similar.[5] *See Gantt*, 194 F.3d at 1004 (" '[T]he purpose of handing the occupant (when present) the warrant [under Rule 41(d)], like that of the "knock and announce" rule, is to head off breaches of the peace by dispelling any suspicion that the search is illegitimate.' " (quoting *United States v. Stefonek*, 179 F.3d 1030, 1035 (7th Cir.1999))).

Just as a person who is somewhere else cannot benefit from the "assurance" provided by the showing of a warrant, an absent person has no present stake in the contemporaneous opportunity to monitor the search for compliance with the warrant. Thus the interest in the "notice" that showing a warrant provides, likewise, does not run to someone who is not there and who cannot exercise that option.

In summary, the interests of Defendant Zepeda–Medrano that a presentment requirement would protect—assurance and notice—were not implicated in this case because he was in prison when the warrant was executed. *See Stefonek*, 179 F.3d at 1035 (noting that the interests protected by a presentment requirement are "irrelevant" when the homeowner is not home). It is true that Defendant's *wife* was home.

But Defendant cannot protest the officers' failure to present her with a copy of the warrant, because Fourth Amendment rights cannot be asserted vicariously. *Rakas*, 439 U.S. at 134, 99 S.Ct. 421; *Johns*, 851 F.2d at 1135. We hold that Defendant Zepeda–Medrano lacks standing to challenge the officers' failure to present his wife with a copy of the warrant.

### D. *Apprendi v. New Jersey*

Defendants Zepeda–Medrano and Silva argue that the district court's sentencing determination violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Those Defendants contend that the district court erred in sentencing them to terms of imprisonment in excess of the maximum sentence allowed for the charges specified in the indictment. We are not persuaded.

The indictments charged Defendants with three counts: (1) conspiracy to manufacture, distribute, and possess methamphetamine, with intent to distribute; (2) manufacture of methamphetamine; and (3) possession of methamphetamine with intent to distribute. The indictments did not specify the amounts of methamphetamine involved.

Defendants pleaded guilty to the first count, conspiracy, and each was sentenced to 262 months. The maximum sentence for the crimes charged in the indictment, however, is 20 years. 21 U.S.C. § 841(a)(1)(C).[6] Defendants' sentences exceeded the statutory maximum by 22 months. Defendants argue that, under *Apprendi*, we must "remand for re-sen-

---

**5.** As noted, Rule 41(d) does not apply, but Defendant Zepeda–Medrano argues for a similar principle under the Fourth Amendment.

**6.** The penalty for conspiring to possess or manufacture methamphetamine with intent to distribute is the same as that "prescribed for the offense, the commission of which was the

object of the attempt or conspiracy." 21 U.S.C. § 846. The penalty for possessing or manufacturing an *unspecified* amount of methamphetamine with intent to distribute is "not more than 20 years." 21 U.S.C. § 841(a)(1)(C).

tencing to no more than the 20–year statutory maximum for a violation of 21 U.S.C. § 841(b)(1)(C)."

■ In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. In *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir.2000), this court applied *Apprendi* to a defendant's conviction and sentence under 21 U.S.C. §§ 841 and 846. Neither *Apprendi* nor *Nordby*, however, answered the question whether a district court errs if it sentences a defendant to a prison term beyond the statutory maximum allowed for the crime charged in the indictment. The Court in *Apprendi* noted expressly that the issue was not presented. 120 S.Ct. at 2355–56 n. 3 ("Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement ... in the indictment.... We thus do not address the indictment question separately today."). We need not reach that question in this case, either, because Defendants Zepeda–Medrano and Silva waived their right to have a jury determine the amount of methamphetamine that they conspired to distribute.

Defendants' plea agreements contain an express waiver of their right to "challenge [the] conviction, sentence or the manner in which it was determined in any collateral attack." Moreover, Defendants pleaded guilty to the precise crime for which they were sentenced: conspiring to manufacture with intent to distribute *50 grams or more* of methamphetamine. Defendants admitted, in their plea agreements, that they

knowingly helped manufacture methamphetamine in the shed located at 2852

Apricot Road, Patterson, California on March 28, 1998. Approximately 220 grams of finished actual methamphetamine had been manufactured, and approximately 58 kilograms of a mixture or solution containing methamphetamine had been manufactured. The finished amount of methamphetamine which could have been produced from this solution is in excess of three kilograms of actual methamphetamine.

Each agreement states that the "maximum potential sentence which the defendant faces" is 10 years *to life*. At the plea hearing, both Defendants testified, under oath, (1) that the facts contained in the plea agreements were true and (2) that they understood that they could be sentenced to life in prison.

An unconditional guilty plea " 'constitutes a waiver of the right to appeal all non-jurisdictional antecedent rulings and cures all antecedent *constitutional* defects.' " *United States v. Reyes–Platero,* 224 F.3d 1112, 1114 (9th Cir.2000) (emphasis in original) (quoting *United States v. Floyd,* 108 F.3d 202, 204 (9th Cir.1997)). Defendants' sentences were within the statutory range for the crime to which they pleaded guilty, which carries with it a sentence of 10 years to life. 21 U.S.C. § 841(b)(1)(A)(viii). Defendants cannot now claim that their sentences are inconsistent with the principle announced in *Apprendi*.[7]

AFFIRMED in part; REVERSED in part; and REMANDED for findings on the validity of the search of Defendants' persons.

---

**7.** Defendants do not challenge the "voluntary and intelligent character of the guilty plea."

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).