WADE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-241-CR

RANDALL CONNER WADE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Randall Conner Wade of possession of between 200 and 400 grams of methamphetamine.  Upon Appellant’s plea of true to an enhancement paragraph, the trial court sentenced Appellant to sixty years’ confinement and assessed a $10,000 fine.  In his first three issues, Appellant complains that the trial court erred in overruling his motion to suppress because (1) the search warrant was tainted by an initial illegal search and seizure; (2) the search warrant affidavit was insufficient on its face; and (3) the search warrant was tainted by material misrepresentations or omissions.  In his fourth issue, Appellant argues that the trial court erred in expanding the indictment.  We will affirm.

I.  Factual Background
 

On October 15, 2001, Deputy Gary Barnett went to an old, tin-walled building located at 224 South Avenue B in Olney to investigate a reported theft allegedly involving Dirk Wade and Brad Wilson.  While standing in the building’s parking lot, Deputy Barnett spoke with Salina Carter, who informed him that Larry Pratt and Appellant were inside the building.  Deputy Barnett approached the building and saw Pratt come out of the building.  Pratt told Deputy Barnett that Appellant was inside the building, but Deputy Barnett thought Pratt was lying and asked him to stay outside.

Deputy Barnett testified that he knocked on the door, and after hearing someone say, “Come in,” he went inside.  Deputy Barnett testified that he entered the building and smelled what he thought was ether, which indicated the possible presence of a clandestine drug laboratory.  He observed Appellant sitting behind a desk in the building working on a lamp.  Appellant is the brother of Dirk Wade. 

Deputy Barnett asked Appellant to step outside of the building, at which time he handcuffed Appellant and placed him in a police car.  Deputy Barnett called for backup, and other officers arrived fifteen minutes later to help secure and watch the building.  Deputy Justin Bullock was dispatched to the building and did a perimeter check around the building to make sure no one else left.  Deputy Bullock testified that he smelled ether and anhydrous ammonia while walking along the south side of the building.  Deputy Bullock also testified that, about thirty minutes after his arrival, he located a trash dumpster approximately fifty to seventy-five feet behind the building, containing ether cans, empty pseudoephedrine packets, and torn-up lithium batteries.  

Based on the information gathered, a warrant was issued allowing the officers to search the tin building and to arrest Appellant and Pratt.  Deputy Barnett testified that no police officers entered the building until they had obtained the search warrant—other than when he initially entered after Appellant said, “Come in.”  When the police searched the building, they found substances and chemicals used to manufacture methamphetamine.  The seized substances were later analyzed by a laboratory, and tests indicated that the substances constituted 392.6 grams of methamphetamine. 

On November 19, 2001, a grand jury indicted Appellant for the offense of possession of between 200 and 400 grams of methamphetamine.  Subsequently, Appellant filed and argued a pretrial motion to suppress evidence discovered during the search of the building.  After conducting a hearing, and without making findings of fact and conclusions of law, the trial court denied Appellant’s motion.  Appellant pleaded not guilty, and the case went to trial.  Upon hearing and considering all of the evidence, a jury found Appellant guilty of the offense of possession of between 200 and 400 grams of methamphetamine. 

II.  Motion to Suppress

In his first three issues, Appellant argues that the trial court abused its discretion in denying his motion to suppress evidence because the evidence was obtained as the result of an illegal search and seizure.  Specifically, Appellant complains that the police conducted an illegal search and seizure before obtaining a search warrant, the search warrant affidavit was facially deficient, and the search warrant was tainted by material misrepresentations or omissions.  Thus, Appellant maintains that the trial court should have suppressed the evidence discovered in the building.

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence for an abuse of discretion.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Oles v. State
, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  We will not overturn the trial court’s ruling unless its decision was outside the zone of reasonable disagreement.  
Salazar v. State
, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001), 
cert. denied
, 534 U.S. 855 (2001).  We afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based upon an evaluation of credibility and demeanor.  
Laney v. State
, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); 
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).  We afford the same amount of deference to the trial court’s rulings on mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor.  
Carmouche
, 10 S.W.3d at 327; 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We will uphold the trial court’s ruling if it is correct on any theory of the law applicable to the case, even if the trial court gave the wrong reason for its ruling.  
Laney
, 117 S.W.3d at 857 (citing 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

When the trial court does not make explicit findings of historical facts, we view the evidence in the light most favorable to the trial court’s ruling and assume that the trial court made implicit findings of fact supporting its ruling, if those findings are supported by the record.  
Carmouche
, 10 S.W.3d at 327-28.  In determining whether a trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).

B.  Standing

The State argues that we need not address Appellant’s first three complaints because he lacked standing to challenge the search and seizure of evidence from the building.  Even though the record does not reflect that the parties or the trial court expressly considered the issue of Appellant’s standing, the State may raise the issue for the first time on appeal.  
See State v. Kilma
, 934 S.W.2d 109, 110-11 (Tex. Crim. App. 1996).

In presenting both state and federal constitutional claims based on unlawful search and seizure, “[Appellant] must be within the purview of constitutional protection.”  
State v. Comeaux
, 818 S.W.2d 46, 51 (Tex. Crim. App. 1991) (citing 
Smith v. Maryland
, 442 U.S. 735, 740, 99 S. Ct. 2577, 2580 (1979) and 
Katz v. United States
, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).  Appellant, as the movant in a pretrial motion to suppress, bore the burden not only of establishing that the search and seizure of evidence were illegal, but also of showing that he had standing to contest the search and seizure, that is, he had a reasonable expectation of privacy in the premises searched.  
Rakas v. Illinois
, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978); 
Granados v. State
, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002), 
cert. denied
, 538 U.S. 927 (2003); 
Villarreal v. State
, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (plurality op.).

To demonstrate a legitimate expectation of privacy, Appellant must show (1) that he had a subjective expectation of privacy in the place or property searched and (2) that society would recognize his subjective expectation as being objectively reasonable.  
Smith
, 442 U.S. at 740, 99 S. Ct. at 2580; 
Katz
, 389 U.S. at 361, 88 S. Ct. at 516 (Harlan, J., concurring); 
Granados
, 85 S.W.3d at 223; 
Villarreal
, 935 S.W.2d at 138.  The court of criminal appeals has enunciated a nonexhaustive list of factors relevant to the determination of whether a given claim of privacy is objectively reasonable:

(1) whether the [defendant] had a property or possessory interest in the place [searched]; (2) whether he was legitimately in the place [searched]; (3) whether he had complete dominion or control and the right to exclude others; (4) whether prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. 

Granados
, 85 S.W.3d at 223; 
Villarreal
, 935 S.W.2d at 138.  No one factor is dispositive; rather, we determine Appellant’s standing based on the totality of the circumstances surrounding the challenged search and seizure.  
Granados
, 85 S.W.3d at 223; 
Villarreal
, 935 S.W.2d at 138.

During the hearing on Appellant’s motion to suppress, both Appellant and Dirk Wade testified that Dirk owned the building that was searched.  The building was used as a warehouse and a shop.  Dirk also testified that Appellant had access to the building, and he said, “Me and him was the only ones that had keys.”  Dirk later testified, however, that a person named David Mosley had been staying in the building for a couple of months because he did not have a home, and Dirk stated that Mosley also had a key to the building.  Appellant testified that the reason he went to the building on October 15, 2001 was to retrieve some oil field valves for a lease and to strip the paint off of a cabinet’s drawers.  Appellant stated that he was at the building for a couple of hours before Deputy Barnett arrived.  Appellant offered no other testimony or evidence to establish his standing to challenge the search of the building and the evidence seized during the search.

While the Fourth Amendment’s prohibition on unreasonable searches and seizures applies to property used for residential purposes, as well as to property put to commercial use, “[p]roperty used for commercial purposes is treated differently for Fourth Amendment purposes from residential property.”  
Minnesota v. Carter
, 525 U.S. 83, 90, 119 S. Ct. 469, 474 (1998).  “‘An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual’s home.’”  
Id
. (quoting 
New York v. Burger
, 482 U.S. 691, 700, 107 S. Ct. 2636, 2642 (1987)).  Appellant did not establish that he owned, leased, or lived in any portion of Dirk’s tin building.  Further, that Appellant had a key to the building and was working inside it is not determinative of whether he had a property or a possessory right to the building.  
See Johnson v. State
, 583 S.W.3d 339, 404 (Tex. Crim. App. [Panel Op.] 1979) (holding defendant, who had a key to his father’s business—the premises searched—because he was an employee of the business, lacked standing to challenge the search of the building his father owned); 
see also United States v. Silva
, 247 F.3d 1051, 1056 (9th Cir. 2000) (holding, based on totality of circumstances, that defendants had no standing to challenge search of shed in which methamphetamine was being produced, even though defendants claimed to have stayed in shed during previous night and possessed a key to the shed);
 United States v. Baron-Mantilla
, 743 F.2d 868, 870 (11th Cir. 1984) (“More evidence than possession of a key was necessary to satisfy appellant’s burden of establishing a legitimate expectation of privacy in the premises.”).

Upon our careful examination of the record from the hearing on Appellant’s motion to suppress, based on the totality of the circumstances, we hold that Appellant failed to meet his burden of establishing his standing to contest the search of Dirk’s building and the seizure of evidence collected therein.  
See
 
Granados
, 85 S.W.3d at 223; 
Villarreal
, 935 S.W.2d at 138.  Accordingly, we cannot say that the trial court abused its discretion in denying Appellant’s motion to suppress.  
See
 
Laney
, 117 S.W.3d at 857.  We overrule Appellant’s first, second, and third issues.

III.  Jury Charge

In his fourth issue, Appellant complains that the trial court impermissibly “expanded the indictment,” which alleged that Appellant possessed the controlled substance methamphetamine, by instructing the jury that the term “controlled substance” included “the aggregate weight of any mixture, solution, or other substances containing a controlled substance.”  While the State correctly points out that Appellant did not object to the charge, in addressing Appellant’s charge issue, we hold that Appellant’s fourth issue is wholly without merit.  
See 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (providing that unobjected-to charge error is reviewed under an “egregious harm” analysis); 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g).

Here, the trial court properly instructed the jury on the meaning of the term “controlled substance” and did not “expand the indictment,” as Appellant now claims on appeal.  
See
 
Tex. Health & Safety Code Ann.
 § 481.002(5) (Vernon Supp. 2004) (stating that the term “controlled substance” includes “the aggregate weight of any mixture, solution, or other substance containing a controlled substance”); 
Melton v. State
, 120 S.W.3d 339, 343 (Tex. Crim. App. 2003).  Because we conclude that the trial court did not err in instructing the jury on the statutory definition of the term “controlled substance,” we overrule Appellant’s fourth issue.

IV.  Conclusion

Having overruled Appellant’s four issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  June 24, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.